[L. A. No. 17546. In Bank.—December 20, 1940.]

E. H. WOODARD, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Gerard Remington for Petitioner.

Claude Minard for Respondent.

THE COURT.—Petitioner was cited to appear before a local administrative committee of The State Bar and to show cause why he should not be disciplined for professional misconduct growing out of the alleged violation of his oath and duties as an attorney and the commission of acts involving moral turpitude within the meaning of subdivisions 2 and 5 of section 287 of the Code of Civil Procedure, now sections 6103 and 6106 of the State Bar Act. At the conclusion of its hearings, at which both oral and documentary evidence was introduced, the committee found that petitioner had violated not only the cited sections of the act but in addition had violated subdivision 4 of section 287, *supra* (now sec. 6105 of the State Bar Act), and subdivisions 2 and 4 of section 282 of the Code of Civil Procedure (now subds. b and d of sec. 6068, State Bar Act). The local committee accordingly recommended that petitioner be suspended from the practice of the law for a period of three months and receive a public reprimand. Following its examination of the record, the Board of Governors adopted the findings of the local committee, but has recommended that petitioner be suspended for a period of one year. By this proceeding the petitioner seeks to have the

record reviewed and the recommendation of punishment annulled on the ground that it is excessive and not supported by the evidence. It is suggested that "at the most a private reprimand would be sufficient."

Preliminary to any discussion of the merits, we desire to state that we do not approve of a procedure, such as was here followed, which cites an attorney to show cause why he should not be disciplined upon certain specifically alleged charges but which ultimately, and without any amendment to conform to proof, results in a recommendation that he be disciplined on additional charges. When the evidence upon the hearing brings to light other infractions, rule 19 of the "Rules of Procedure of the State Bar of California" suggests the appropriate procedure to be followed. It is there provided that "The committee, at any time prior to the conclusion of the hearing, or the board, at any time prior to the making of its decision, may allow or require amendments to the notice to show cause or may allow amendments to the answer. The notice to show cause may be amended to conform to proof, or to set forth additional facts, whether occurring before or after the commencement of the hearing. In case such an amendment is made, the respondent shall be given reasonable time to answer the amendment, to procure evidence, and to defend against the misconduct charged thereby." In *Irving* v. *The State Bar*, 213 Cal. 81, 85 [1 Pac. (2d) 2], it is stated that "Although the committee's examiner at the conclusion of the hearings, secured leave to amend to conform to proof, no amendments in fact were made, *and the findings must rest on the charges filed.*"

The foregoing is advanced merely in the interest of a more orderly procedure. The right to practice law is a valuable one which should be suspended or revoked only on charges alleged and proved and as to which full notice and opportunity to defend have been accorded. However, what we have said in this connection is not determinative of the present cause, for we are satisfied from our examination of the record that petitioner's conduct was such as to warrant some discipline under the charges actually alleged.

It appears that petitioner filed a complaint for damages in the sum of $500,000 based on an alleged conspiracy by which his client assertedly lost her position as a member of the staff of the Los Angeles City Library. Named as defend-

ants in the complaint were all of the members of the Board of Library Commissioners, certain members of the library staff and five John Does. On the day the complaint was filed, petitioner with his son appeared at the office of John Beardsley, the deputy city attorney who had represented the board throughout the hearings which had led to the dismissal of petitioner's client. Petitioner's son on this occasion, and at the former's request, handed the deputy city attorney a copy of the complaint and summons. A few days later, Beardsley, believing the circumstances a little unusual, telephoned to petitioner and inquired if he had intended serving him as a John Doe defendant, to which he received an affirmative reply. Thereafter and within the statutory time, a demurrer was filed by the city attorney's office on behalf of all defendants including "John Beardsley, Deputy City Attorney, sued herein as John Doe." Four days later petitioner had executed and filed an affidavit of service which purported to describe service upon members of the board and upon Beardsley both as attorney for the board and as an individual. However, he was therein shown to have been served in each instance as "John Doe IV". On the same day petitioner filed a document purportedly amending the complaint so as to state Beardsley's true name. Likewise on this same day the petitioner filed a document entitled "Judgment", signed by him, in which it is recited that the defendants had appeared in their official capacities but not in their individual capacities "and their failure so to do is, in law, a confession of the whole thereof, and no other proof is required by law . . . Now Therefore it is decreed and ordered by law . . . that the clerk must immediately . . . enter judgment for the amount demanded in the complaint against . . . John Beardsley alias John Doe IV, for Five Hundred Thousand ($500,-000) Dollars with costs and interests . . . "

On the following day, the trial court heard and sustained the demurrer filed by the defendants with leave to the plaintiff to amend. Petitioner, as plaintiff's attorney, was immediately served with notice thereof. Notwithstanding such notice, petitioner filed on the next day a "Notice of Entry of Default" requesting the clerk to enter the default of all the defendants in their "individual capacity" on the ground that they were so served and had failed to answer. Pursuant to this request the clerk entered the default of Beardsley in

his individual capacity. Approximately one week later petitioner wrote a letter to the county clerk enclosing a writ of execution and demanding its immediate execution and filing. Within a few days petitioner also mailed to the clerk a "First Amendment to Judgment", also signed by the petitioner, which contained some recitations not included in the first "Judgment", and again purported to "decree and order" judgment against defendants·in the sum of $500,000.

Later petitioner's client was defaulted because of her failure to amend the complaint within the time specified in the order sustaining the demurrer thereto. Thereafter notices of motion were filed to set aside Beardsley's default and to dismiss the action. On behalf of his client petitioner filed opposition to both motions. Prior to any action thereon by the trial court, petitioner served a certified copy of the above-mentioned "First Amendment to Judgment" upon the county auditor, together with the affidavit required by section 710 of the Code of Civil Procedure, in an effort to have whatever money was then due from the county to Beardsley, who in the meantime had been elevated to the superior court bench, paid into court in partial satisfaction of the "judgment". Inasmuch as the documents signed and filed by petitioner as "Judgments" had never been entered as such, Beardsley's salary, upon advice of the city attorney, was not withheld by the county treasurer. Ultimately the trial court granted the defendants' motions and thereupon set aside Beardsley's default and dismissed the action. Petitioner noticed an appeal therefrom on behalf of his client.

Petitioner's conduct in the foregoing particulars led to the present disciplinary proceeding against him. At the hearings he explained that his practice of the law had been more or less confined to criminal cases and that he usually consulted with others when involved in civil litigation. In the prosecution of the civil conspiracy action he stated that he consulted with and followed the advice of one who had been associated for many years with a well-known legal research bureau but who was not an attorney. He further testified that he had encountered difficulty with the preparation of the papers in this conspiracy action and as a result had followed the entire procedure upon his consultant's advice after he had satisfied himself from citations furnished that the "course had a legal foundation to it." He admitted, how-

ever, that he considered the procedure to be "a distinct departure". It further appears that petitioner, who is now fifty-six years of age, was admitted here in 1924 on motion from North Carolina where he had been admitted in 1916. He testified that "If I am not very much mistaken I think it is true" that in North Carolina, where he had formerly practiced, attorneys were permitted to sign judgments when they were filed. He conceded, however, that he had not previously adopted such a course here and that "Maybe I listened to the wrong advice", but "There was never any intent to be dishonest or resort to trickery."

Petitioner's explanation of his conduct is not convincing. In his testimony he admitted that he considered the procedure pursued by him to be "a distinct departure" and he frankly conceded that in his several years of practice in this state he had not theretofore followed such a course. He has not cited us to the authorities which he testified satisfied him that such "course had a legal foundation to it". Nor is his equivocal testimony as to the practice in North Carolina persuasive. Regardless of the restricted nature of his prior practice, we are of the opinion that even the most inexperienced practitioner, possessing a minimum knowledge of the law, should be cognizant, several years after his admission in this state, of the impropriety involved in the filing and attempted execution of self-signed "judgments", particularly when demurrers of the adversaries theretofore had been sustained and motions to vacate and set aside their purported individual defaults were then under consideration by the court. We can find no substantial excuse for the petitioner's improper conduct which, in our opinion requires disciplinary action. However, under all of the circumstances, we are of the view that a three months' suspension, as recommended in part by the local committee, is adequate.

It is therefore ordered that petitioner be suspended from the practice of the law for a period of three months commencing thirty days after the filing of this decision.

CARTER, J.—I dissent.

I cannot agree with the conclusion reached in the majority opinion for the reason that if the petitioner committed the acts related therein wilfully and designedly, he should be disbarred or severely disciplined, as such acts clearly con-

stitute a fraud upon the court, and a member of the bar who would knowingly and designedly resort to such practices should be more severely disciplined than suspended from the practice of law for the period of three months or even for one year. On the other hand, if petitioner committed such acts because of ignorance or incompetence, and without any intention or design to perpetrate a fraud on the court or the parties affected by his conduct, there is no provision of law under which he can be disciplined, as the State Bar Act does not authorize the infliction of discipline upon a member of the bar for ignorance or incompetence.

From my examination of the record in this case, I am forced to the conclusion that petitioner does not possess the legal learning and ability requisite to enable him to successfully continue in the practice of law in this state, but since there is no provision of law under which his license to practice can be revoked for incompetency or inefficiency, there is nothing this court can do to restrict his activity as a member of the bar of this state so long as he complies with the provisions of the State Bar Act and the rules of professional conduct promulgated by the Board of Governors of The State Bar of California and approved by this court.

Houser, J., concurred.