[S.F. No. 24552. Dec. 30, 1983.]

LESTER JOHN GENDRON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

412

COUNSEL

Lester J. Gendron, in pro. per., and Gendron & Gendron for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Philip Martin for Respondent.

OPINION

**THE COURT.**\*—Petitioner provided public defender services under a contract with the County of Madera from 1976 through 1979. The Review Department of the State Bar Court found that during the period of this contract, he violated several rules of professional conduct. The review department has recommended that petitioner be suspended from the practice of law for 30 days. It has further recommended that the suspension be stayed and that petitioner be placed on probation for one year.[1]

I.

On May 26, 1981, petitioner was served with a notice to show cause, charging him with violating rules 4-101 and 5-102 of the Rules of Professional Conduct and committing acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106).[2] The State Bar later attempted to amend

---

\*Before Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Richardson, J.†

[1]The hearing panel concluded otherwise. In a decision signed by only two of the three original panel members, it was recommended that petitioner be formally admonished. There were no dissenting opinions to the hearing panel's decision.

[2]Rules 4-101 and 5-102 provide as follows:

Rules 4-101: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

Rule 5-102: "(A) A member of the State Bar shall not accept professional employment without first disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment. A member of the State Bar who accepts employment under this rule shall first obtain the client's written consent to such employment.

"(B) A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."

Hereafter, all references to rules are to the Rules of Professional Conduct unless otherwise stated.

---

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

the notice to show cause[3] to add charges that petitioner had violated his oath and duties as an attorney (Bus. & Prof. Code, § 6103) and had violated rules 5-101 and 6-101.[4]

Four counts of unprofessional conduct were alleged in the original notice. (A fifth count was added in the amended notice.) Each count was based on petitioner's representation of multiple defendants in a single criminal case, and alleged a violation of each of the above-mentioned rules and Business and Professions Code provisions. The hearing panel concluded that petitioner had committed one violation of rule 5-102(B), and that it was neither "willful" nor "serious" within the meaning of rule 415 of the Rules of Procedure of the State Bar.[5] The review department found that petitioner

[3]The State Bar actually made two attempts to amend the notice to show cause. Its first motion to amend was filed on August 24, 1981. At the initial hearing on September 1, 1981, petitioner sought a continuance on the ground that he had not been given sufficient notice of the amendments. The referee refused to grant a continuance and, to avoid any notice problem, directed that the hearing proceed *only* upon the allegations in the original notice. On September 4, 1983, the State Bar filed a written renewal of its motion to amend. One week later, the State Bar moved for an order requiring petitioner to file an answer to "the Notice to Show Cause herein, or the Amended Notice to Show Cause *if such is granted* . . . ." (Italics added.)

Hearing in the case resumed on October 13, 1981. At no time during that hearing, nor at any time thereafter, did the State Bar seek a ruling on its motion to amend or its motion for an order requiring petitioner to answer. It appears that neither motion was ever ruled upon.

However, at the October 13 hearing, evidence was taken as to the allegations of both the original and amended notices. Petitioner made no objection to the receipt of evidence on the additional allegations. The findings of the hearing panel include findings which are based solely on the allegations of the amended notice. Petitioner's objections to these findings, however, are not based on the ground of lack of notice.

[4]Rules 5-101 and 6-101 provide as follows:

Rule 5-101: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

Rule 6-101: "A member of the State Bar shall not willfully or habitually

"(1) Perform legal services for a client or clients if he knows or reasonably should know that he does not possess the learning and skill ordinarily possessed by lawyers in good standing who perform, but do not specialize in, similar services practicing in the same or similar locality and under similar circumstances unless he associates with or, where appropriate, professionally consults another lawyer who he reasonably believes does possess the requisite learning and skill;

"(2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed.

"The good faith of an attorney is a matter to be considered in determining whether acts done through ignorance or mistake warrant imposition of discipline under Rule 6-101."

[5]Rule 415 defines a serious offense as follows: "As used in this rule 'serious offense' is dishonest conduct or a dishonest act, as so defined, and conduct or acts constituting bribery,

had willfully violated rules 4-101, 5-102(B), 6-101 and Business and Professions Code section 6103.[6]

## II.

Petitioner has been a member of the State Bar since 1953. The incidents of unprofessional conduct with which petitioner is charged occurred between 1976 and 1979 when petitioner was under contract to provide public defender services in Madera County.

The terms of the contract provided, inter alia, that petitioner be paid $104,000 per year to represent Madera County's indigent criminal defendants. From that sum, $15,000 was to be deducted and deposited in a reserve account to pay other defense counsel who were appointed when petitioner's office was unable to provide representation due to a conflict of interest. If the reserve account became exhausted during the year, petitioner was to be held liable for the deficiency. On the other hand, any unexpended balance in the account at the end of the fiscal year was to be paid to petitioner. In *People* v. *Barboza* (1981) 29 Cal.3d 375, 378-379 [173 Cal.Rptr. 458, 627 P.2d 188], this court found that this contract placed petitioner under a clear financial disincentive to declare conflicts of interest.[7]

The evidence of petitioner's misconduct is summarized below.

### The Patrick and Harold Hammond Matter

In 1979, Patrick and Harold Hammond were charged with assault with intent to commit murder. The charges grew out of an altercation in a bar in which a third party was stabbed. The Hammonds were arrested a short distance from the bar. At the time of their arrest, both were carrying knives.

---

forgery, perjury, extortion, obstruction of justice, burglary or offenses related thereto, intentional fraud and intentional breach of a fiduciary relationship."

[6]As previously noted, violations of rule 6-101 and Business and Professions Code section 6103 were not charged in the original notice to show cause.

[7]This court gave the *Barboza* ruling prospective effect because of the "probable reliance upon the validity of the [Madera County Public Defender] contract prior to the filing of the opinion." (*People* v. *Barboza, supra,* 29 Cal.3d at p. 381.) Thus the contract was in effect during all the criminal cases which gave rise to the disciplinary violations now before this court. In fact one of the counts is based on petitioner's handling of the Barboza brothers' defense. This court reversed the defendants' convictions in *Barboza* because of an inherent conflict in the provisions of the public defender *contract.* This court refrained from reaching the issue posed by the present disciplinary proceedings: whether an actual conflict existed between the two defendants, and whether petitioner improperly failed to inquire into the existence of a conflict. However, the Rules of Professional Conduct regarding conflicts of interest were in effect long before the *Barboza* case. They governed petitioner's conduct irrespective of the *Barboza* decision.

The knife in Patrick's possession was covered with blood, while Harold's was clean.

At the preliminary examination of the brothers, petitioner represented both defendants. Attorney J. V. Henry, a Los Angeles lawyer who was present at the request of Harold Hammond, asked the court to declare a conflict. Over petitioner's objection, a conflict was declared.

Attorney Henry then indicated his willingness to be appointed. Petitioner opposed this request, arguing that Hammond had no right to counsel of his choice. Rather, he recommended that the court appoint a local attorney from Madera County. At a later time, Harold Hammond again requested that Attorney Henry be appointed to represent him. Instead, the court followed the request of petitioner and appointed Attorney Epstein, a Madera County lawyer. Epstein represented Harold Hammond in the justice court and up until the date of trial in the superior court.

On the date set for the Hammonds' trial, Epstein indicated that due to lack of preparation, the case could not proceed. Attorney Henry again asked to be appointed. Epstein joined in this request and asked to be relieved as counsel of record. Petitioner again opposed this request, as well as Henry's and Epstein's request for a continuance. Ultimately the continuance was granted, and Patrick Hammond pleaded guilty before the next trial date. Only after Patrick entered his plea did the court appoint Attorney Henry to represent Harold. Harold subsequently went to trial and was acquitted.

Attorney Henry testified as a criminal law expert in the State Bar proceedings. He believed that a conflict existed in this case because Harold's best defense was to blame the crime on his brother. The review department found the following: (1) that a conflict of interest existed in this case; (2) that petitioner had opposed Harold Hammond's request for separate counsel; and (3) that petitioner had urged the appointment of local counsel rather than the counsel of Hammond's choice.

*The Rojas-Nunez Matter*

Vivian Rojas and Henry Nunez were charged in early 1978 with multiple counts of robbery and one count of murder. Rojas was an alleged prostitute, working in farm labor camps. She would gain entry to the victim's quarters to perform acts of prostitution. When she left, Nunez would enter the same quarters and rob the victim. The murder occurred when one of the victims resisted and was killed when Nunez' gun discharged.

Petitioner personally represented both clients through proceedings which culminated in negotiated conditional pleas of guilty.

Petitioner conceded in his testimony before the hearing panel that Nunez had a far more serious criminal background than Rojas. Had the case gone to trial, petitioner indicated he would have sought separate representation for the two defendants. He asserted that he had discussed the possibility of a conflict with both Rojas and Nunez on numerous occasions. However, his testimony indicated that many if not most of these discussions were held jointly with both defendants, rather than privately with either one. Both defendants, petitioner testified, insisted on being jointly represented. Petitioner did not obtain written waivers of the conflict from either defendant. Nor did he discuss with them the provisions of the public defender contract.

Petitioner testified that he believed that no conflict was present in the case because the conditional plea arrangement was submitted to the court as a "package." The court would either accept it or reject it as a whole. Thus, petitioner claimed he would not be required to argue his clients' relative culpability when he appeared on their behalf at the sentencing hearing.

The review department found that a conflict of interest existed between Rojas and Nunez and that petitioner had failed to obtain a written waiver of the conflict from either of his clients.

*The Van Alen-Meija-Castenada Matter*

In 1976, Deborah Van Alen, Mike Meija and Richard Castenada were jointly charged with robbery. All three defendants were represented by Attorney Peterson, an employee in petitioner's office. Van Alen pleaded guilty with a promise that she would not be called as a witness against the other two defendants. Meija and Castenada asserted inconsistent defenses and, still represented by petitioner's office, were jointly tried and convicted. Their convictions were subsequently reversed on appeal because separate counsel should have been provided for them.

Before the hearing panel, Peterson testified that he did not obtain written waivers of the conflict of interest from any of the defendants. Nor did he notify the defendants as to the provisions in the contract with Madera County which required petitioner to pay for separate appointed counsel. Peterson also testified that he received no supervision from petitioner with regard to either his representation of the three clients or his handling in general of cases in which a conflict of interest might be present.[8]

---

[8]It should be remembered that "[a]n attorney has an obligation to adequately supervise his employees . . . ." (*Spindell* v. *State Bar* (1975) 13 Cal.3d 253, 260 [118 Cal.Rptr. 480, 530 P.2d 168, 80 A.L.R.3d 1231].) Thus, in instances where staff attorneys represented petitioner's clients, petitioner remained ultimately responsible for their decisions as to declarations of conflicts.

The review department made no finding which pertained specifically to this case. However, it made four general findings (No. 6, No. 7, No. 8, and No. 9, set forth below) which were based on petitioner's conduct in this and other cases.

*The Barboza Brothers Matter*

In early 1978, Rudolfo and Alberto Barboza were charged with aggravated assault. They were convicted after a jury trial in which they were jointly represented by petitioner's office. As noted above, their convictions were reversed by this court because the contract between petitioner and Madera County "contain[ed] inherent and irreconcilable conflicts of interest." (*People* v. *Barboza, supra,* 29 Cal.3d at p. 381.)

The Barboza brothers were represented through the preliminary hearing stage by Attorney Iglesia, one of petitioner's employees. The provisions of the public defender contract were never discussed with the defendants, nor were written waivers of the conflict of interest obtained.

Attorney Bandy, another employee of petitioner, represented the Barbozas at trial. At the State Bar hearing, he testified that he did not pursue the matter of declaring a conflict because he assumed that Iglesia had already consulted with petitioner and had resolved the question. Although no written waiver of conflict was obtained from the two clients, it was Bandy's opinion that the Barbozas would have signed such a waiver had they been asked to do so.

In *Barboza* this court did not reach the question of whether a conflict of interest actually existed under the circumstances presented. (29 Cal.3d at p. 381.) As in the previous matter, the review department made no finding pertaining specifically to this case.

*The Riley-Knight-Wesley Case*[9]

In January of 1979, Thomas and Anthony Riley, David Knight, and Shelby Wesley were charged with the robbery of a store. All four defendants were initially represented by petitioner's office. The case was assigned to Attorney Bandy.

Before trial, Thomas Riley filed a motion in propria persona requesting appointment of separate counsel. The motion was granted and his case was

---

[9]The count involving this case was not contained in the original notice to show cause. (See *post,* pp. 420-421.)

severed from the others. At the State Bar hearing, Bandy testified that if Riley had not filed his own conflict motion one would have been filed on his behalf. Bandy indicated that petitioner had authorized him to declare a conflict.

David Knight went to trial with the remaining codefendants and all of them were represented by petitioner's office. Knight was convicted. On appeal, his conviction was reversed on the ground that he should have been provided with separate counsel.

According to Bandy, the office policy at the time of the Riley-Knight-Wesley case was to declare conflicts *only* when the prospect existed that one codefendant would testify against another. The review department made no finding pertaining specifically to this case.

### III.

Petitioner advances two primary contentions. First, he asserts that he was denied due process of law in these proceedings because he had to proceed without counsel at the initial hearing on September 1, 1981. Second, he attacks the sufficiency of the evidence upon which the review department made its findings. These contentions are addressed in the order presented.

Petitioner appeared at the September 1st hearing with Attorney Devaney. Devaney stated that he was not prepared to go forward on that date because he was uncertain as to whether he was ethically permitted to examine various confidential client communications which were in petitioner's files. Because of his concerns, Devaney had not yet examined those files. He requested a ruling on the question from the referee. When the referee ruled that confidentiality of client communications was waived in State Bar proceedings, Devaney sought a continuance to prepare for the hearing. Devaney was not formally counsel of record for petitioner. Absent a continuance, he stated he would withdraw from participating further in the proceedings.

The referee refused to grant a continuance, because petitioner had had ample time to prepare for the hearing since he was served with the notice to show cause on May 26, 1981. Petitioner waited until only 12 or 13 days before the September 1st hearing to consult with an attorney. Thus, the referee ruled, Attorney Devaney's lack of preparation was due solely to petitioner's own failure to consult promptly with a lawyer after being served with the notice to show cause.

The hearing proceeded with petitioner representing himself in propria persona. Petitioner continues to represent himself in this proceeding.

■ Petitioner's claim that he was prejudiced by the refusal of the referee to grant him a continuance on September 1st is without merit. As the referee noted, it was petitioner's own inaction for nearly three months which resulted in Attorney Devaney's inability to prepare for the initial hearing. Had petitioner sought representation earlier, the question of the confidentiality of the materials in his files would have been resolved in advance of the hearing date, either informally or through a formal ruling by the referee.[10]

■ Though petitioner was not denied due process because of the absence of counsel, his due process rights may have been violated as a result of the referee's failure to rule on the State Bar's motion to amend the notice to show cause.

As noted above, the State Bar sought to amend the notice to show cause prior to the September 1, 1981, hearing. (See *ante,* fn. 3.) The referee denied the request to amend, because petitioner had not received proper notice of the amendments. The State Bar filed a renewal of its motion to amend on September 4th. This second motion to amend was never ruled upon by the hearing panel. Nor, apparently, did the State Bar ever seek a ruling on the motion.

■ It is well established that "[t]he license [to practice law] may not be arbitrarily taken away and the holder is entitled to procedural due process in any disciplinary proceedings relating thereto." (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 228 [113 Cal.Rptr. 175, 520 P.2d 991].) This is also true where the State Bar seeks to discipline a member of the bar. (*Woodard* v. *State Bar* (1940) 16 Cal.2d 755, 757 [108 P.2d 407].) In *Woodard,* after completion of the hearings and without moving to amend the notice to show cause to conform to proof, the State Bar recommended that Woodard be disciplined on charges not presented in the notice. This court disapproved the practice, noting that if the evidence showed violations additional to those not recited in the notice, the State Bar could move to amend the notice to conform to the proof. (*Ibid.*) ■ In the present case, the State Bar *did* move to amend the notice. However, the referee never ruled on the motion, and the State Bar never sought to correct the error. Since the notice was not properly amended, the State Bar cannot impose discipline on any of the charges which were not contained in the original notice.

---

[10]Rule 556 of the Rules of Procedure of the State Bar provides that the rules of evidence applicable in civil proceedings are generally applicable in disciplinary proceedings. Evidence Code section 916 permits a party to any proceeding to seek a ruling on the admissibility of evidence where a claim of privilege is alleged. Evidence Code section 958 provides that attorney-client communications are not privileged under that section if the proceeding involves a breach of a duty arising out of the lawyer-client relationship.

This court's decision in *Irving* v. *State Bar* (1931) 213 Cal. 81 [1 P.2d 2] supports this conclusion. In that case, hearings were held on four verified complaints, each charging a violation of the same Rule of Professional Conduct. At the conclusion of the hearings, the State Bar examiner obtained leave to amend the complaints to charge a violation of an additional rule. Leave to amend was granted, but the amendments were never actually made. (*Id.,* at p. 83.) This court held that because "no amendments in fact were made, . . . the findings must rest on the charges filed [in the original complaints]." (*Id.,* at p. 85.) The same rule should apply here. Since leave to amend was never granted, only the charges contained in the original notice may be considered.[11]

Next, the issue as to the sufficiency of the evidence in support of the review department's findings must be addressed. Of the nine findings of fact set forth by the review department, petitioner objects to all but one. He bears the burden of showing that the findings of the State Bar are erroneous. (*In re Petty* (1981) 29 Cal.3d 356, 360 [173 Cal.Rptr. 461, 627 P.2d 191].)

Petitioner first challenges the review department's finding No. 2.[12] He asserts that in the Nunez and Rojas matter he advised his clients of the conflict which existed and they specifically wished to have joint representation. However, even assuming this to be true, petitioner did not obtain a written waiver of the conflict from his clients as required by paragraph (B) of rule 5-102. (See *ante,* fn. 2.) Accordingly, petitioner has not met his burden of demonstrating that this finding was erroneous.

Petitioner also challenges findings No. 3, No. 4 and No. 5 concerning the Hammond brothers' case.[13] He asserts that the sole basis for his

---

[11]It could be argued that petitioner waived his right to complain of the failure to amend by participating in the hearings and by failing to object to the introduction of evidence on the additional charges. However, in both *Woodard* and *Irving* the petitioners participated fully in the hearings and apparently did not object to the State Bar's conduct. Additionally, it must be remembered that petitioner in this case did object to the initial attempt by the Bar to amend the notice, and the hearing went forward only on the original allegations.

[12]This finding reads as follows: "2. In 1978, Respondent represented Vivian Rojas and Henry Nunez, who were jointly charged with murder and numerous counts of robbery. A conflict of interest existed between Rojas and Nunez. Respondent failed to obtain the written consent of Rojas and Nunez to Respondent's joint representation."

[13]Findings No. 3, No. 4 and No. 5 read as follows: "3. In 1979, Respondent was appointed by the Court to represent Patrick Hammond and Harold Hammond, who were charged with attempted murder.

"4. A conflict of interest existed between Patrick Hammond and Harold Hammond. A private attorney appeared in Justice Court on Harold Hammond's behalf, and advised the court that a conflict existed between Patrick Hammond and Harold Hammond, and that

opposition to the appointment of separate counsel to represent Harold Hammond was his desire to see that Madera County counsel, rather than out-of-county counsel, was appointed. However, the record belies petitioner's assertion. Petitioner's own testimony established that he not only challenged the appointment of out-of-county counsel, but represented to the court that he saw no conflict in the matter.

The review department's conclusion that a conflict existed between the Hammond brothers is supported by the record. The evidence against each of the defendants was such that inconsistent defenses were called for. Furthermore, petitioner's opposition to Harold's request for separate counsel is a separate and independent breach of the rules. Even after petitioner was relieved as counsel for Harold Hammond, he remained under a duty not to oppose the interests of his former client without that client's consent. (Rule 4-101.) Nowhere does petitioner assert that he obtained his former client's consent as required by this rule.

Petitioner seeks to justify his opposition to the appointment of out-of-county counsel by stating that he was merely acting in his capacity as president of the Madera County Bar Association. But petitioner's proferred justification only underscores the basic problem. According to his own explanation, petitioner acted as an advocate for the local bar association contrary to the interests of his prior client. Such conduct is specifically proscribed by rule 4-101. Thus, petitioner's challenge to the sufficiency of the evidence in support of findings Nos. 3, 4, and 5 is without merit.

Petitioner next challenges finding No. 6.[14] Since finding No. 6 relates to a charge contained only in the amended notice, it will be set aside for the reasons stated above. (See *ante*, pp. 420-421.)

■ Next, petitioner asserts that finding No. 7 is "untrue."[15] He admits that he presented no evidence to the hearing panel in support of this conten-

---

Harold Hammond wished the private attorney to assume his representation. Respondent opposed the appointment of a private attorney to represent Harold Hammond, and advised the Court that no conflict existed.

"5. Harold Hammond renewed his motion in Superior Court, and the Motion was opposed by Respondent on the grounds that there was no conflict of interest, and, if private counsel was appointed, it should be a local Madera County attorney rather than the out-of-county attorney whom Mr. Hammond desired."

[14]This finding reads as follows: "6. Between 1976 and 1979, Respondent failed to use reasonable diligence and his best judgment in the supervision of lawyers of his staff regarding the declaration of conflicts in multiple-defendant cases." The subject matter of this finding relates to rule 6-101, a violation of which was not alleged in the original notice to show cause.

[15]This finding reads as follows: "7. During 1976 to 1979, Respondent established an office policy of only declaring conflicts in multiple-defendant cases when one defendant was going to testify against another defendant. This policy led inexperienced attorneys on respondent's staff to improperly represent conflicting interests."

tion. The bulk of the testimony indicated that petitioner's office policy during this period was *not* to declare conflicts except when one defendant was to testify against another. Attorney Peterson testified that he understood this to be the policy when he joined the firm in 1976. Attorney Bandy also understood this to be the firm's policy, although he testified that the policy was changed before the *Barboza* decision was issued in 1981. (Petitioner introduced as an exhibit a memorandum to the Madera County courts, dated September 26, 1980, stating that his firm would no longer represent more than one defendant in a multiple-defendant case.) However, during the period of the contract, the evidence showed that younger attorneys in the firm understood that if one defendant was *not* going to testify against the other, conflict declarations would have to be approved by petitioner or his wife (also a member of the firm), and that such declarations were very strongly discouraged. There was more than sufficient evidence in the record to support the review department's conclusion.

■ In finding No. 8, the review department concluded that petitioner acted in all of these matters to protect his own financial interests.[16] Petitioner challenges that finding and argues that (1) by 1979, approximately $15,000 was paid to private counsel on appointed cases, and (2) between 1976 and 1979, there was a rapid increase in the number of cases in which private counsel was appointed.

In *Barboza,* this court held that petitioner's contract with Madera County created a financial incentive to avoid declaring conflicts. (29 Cal.3d at p. 380.) The evidence here supports the conclusion that this same financial incentive was behind the policy of finding No. 7 and motivated the actions taken in the Hammond and Rojas-Nunez cases. Accordingly, finding No. 8 is supported by the evidence.

■ Finally, petitioner challenges finding No. 9,[17] which sets forth several rule violations. Petitioner concedes he should have obtained a written waiver from his clients in the Nunez-Rojas matter. However, he contests the other violations.

Rule 4-101 prohibits an attorney from accepting employment adverse to a client or former client from whom he has received information in confidence without obtaining the client's or former client's written consent.

---

[16]Finding No. 8 reads as follows: "8. Respondent's actions were motivated by financial self-interest."

[17]This finding reads as follows: "9. By Respondent's conduct set forth above, Respondent wilfully violated Rules 4-101, 5-102(B), and 6-101(2), Rules of Professional Conduct, and Business and Professions Code Section 6103."

In the Rojas-Nunez matter, petitioner impliedly admitted that he represented clients with adverse interests when he conceded that he did not obtain a written waiver of conflict from either of his clients. Petitioner admitted as well that he had received confidential information from these clients.

In the Hammond matter, the record indicates that petitioner accepted appointment to represent both of the Hammond brothers despite a conflict. There was no written waiver from the Hammonds before proceeding with their case. Additionally, petitioner argued on behalf of the Madera County Bar Association *against* Harold Hammond's interests. He did so immediately after having been relieved as Harold's counsel. No attempt was made to inform Harold of this conflict and no written waiver form was signed.

With respect to the Rojas-Nunez and the Hammond matters, the record reveals ample evidence that petitioner violated rule 4-101. Further, petitioner violated rule 5-102(B) by representing conflicting interests without the written consent of all the parties.[18]

## IV.

In considering what discipline is appropriate, we observe that petitioner's conduct amounts to moral turpitude within the meaning of Business and Professions Code section 6106. Moral turpitude has been found where there is "gross carelessness and negligence" (*Sanchez* v. *State Bar* (1976) 18 Cal.3d 280, 285 [133 Cal.Rptr. 768, 555 P.2d 889]). The state of the law with respect to a defense attorney's duty to investigate and declare conflicts was sufficiently clear at the time petitioner entered into this contract with Madera County. His conduct amounted to gross negligence.

Existing case law as of 1976 clearly informed attorneys of their duty to refrain from representing multiple defendants in any criminal case where there was a possibility of conflicting defenses. (*In re Hochberg* (1970) 2 Cal.3d 870, 878 [87 Cal.Rptr. 681, 471 P.2d 1]; *People* v. *Chacon* (1968) 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454]; *Glasser* v. *United States* (1942) 315 U.S. 60 [86 L.Ed. 680, 62 S.Ct. 457].) It also taught that each client had a right to conflict-free advice on whether it was in his or her best interests to present such conflicting defenses. Absent such advice, no waiver of separate counsel could have been knowing and intelligent. (*Glasser* v. *United States, supra,* 315 U.S. at pp. 70-75 [86 L.Ed. at pp. 699-701]; *People* v. *Chacon, supra,* 69 Cal.2d at pp. 773-774.)

---

[18]The finding will be modified to omit reference to rule 6-101(2) and to Business and Professions Code section 6103, since these were not alleged in the original complaint.

 Furthermore, the American Bar Association (ABA) had declared that in a multiple-defendant case, the presumption must be *against* joint representation. Only after it is ascertained through investigation that no conflict is likely to develop may an attorney represent jointly charged defendants: "The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." (ABA Project on Standards for Crim. Justice, Stds. Relating to the Defense Function (Approved Draft 1971) std. 3.5(b).)

Petitioner's policy of declaring conflicts at the latest possible stage and of declaring them only when it appeared that one client would have to testify against another, must be deemed gross negligence in light of the case law and the ABA Standards. Certainly his active opposition to his client Hammond's expressed desire for separate counsel is a breach of the most basic fiduciary obligation not to argue against a client's interest. " 'Gross carelessness and negligence constitute a violation of the oath of an attorney to discharge faithfully the duties of an attorney to the best of his knowledge and ability and involve moral turpitude, in that they are a breach of the fiduciary relation which binds him to the most conscientious fidelity to his clients' interests. [Citations.]' " (*Sanchez* v. *State Bar, supra,* 18 Cal.3d at p. 285.)

 Petitioner has practiced law in Madera County for 30 years free of any disciplinary proceedings. This fact weighs in his favor. (See *Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 611 [108 Cal.Rptr. 359, 510 P.2d 719].) Further, petitioner did abandon the policy of refusing to declare conflicts except when one defendant was planning to testify against another. Under these unusual circumstances, this court is satisfied that a public reprimand will constitute sufficient discipline. This opinion shall serve as that reprimand.

RICHARDSON, J.,* Concurring and Dissenting.—I concur in the court's opinion in every respect except one: the conclusion that a public reprimand will constitute sufficient discipline for the misconduct disclosed in that opinion. In my view, that conclusion is at odds with the court's determination that petitioner was guilty of moral turpitude in his failure to discharge faithfully the duties he owed to his clients because of their conflicting interests. (See *Galbraith* v. *The State Bar* (1933) 218 Cal. 329 [23 P.2d 291]; *Sheffield* v. *State Bar* (1943) 22 Cal.2d 627 [140 P.2d 376] [three-month sus-

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

pensions for representing clients with conflicts of interest].) At the very least we should adopt the recommendation of the State Bar in this case that petitioner be suspended from practice for 30 days, with that suspension stayed and petitioner placed on supervisory probation for 1 year, in order to ensure that petitioner fulfills his promise to terminate his objectionable defense policy.

**MOSK, J.**—I dissent.

This was a strange contract that petitioner had with the County of Madera, and it was probably inevitable that there would be strange results. Basically, however, it was understood that petitioner would use his best professional judgment in determining how indigent defendants were to be represented. He exercised his best professional judgment. Although he may have erred on occasion, to now read moral turpitude into petitioner's conduct is to employ holier-than-thou hindsight.

Every case involved in these proceedings was heard in open court. If a potential conflict of interest emerged, or was even suspected, a trial court was perfectly competent to deal with it appropriately. The instance in which a trial court became actively involved was the Hammond matter concerning appointment of an out-of-county attorney. I find it incomprehensible that petitioner should be censured for urging the selection of independent local counsel, rather than an attorney from elsewhere. Even if he was yielding to xenophobia, petitioner's views were expressed in open court and were subject to the trial judge's approval or rejection.

The lengthy majority opinion calling for censure of this petitioner, whose record of three decades at the bar and in public life has been impeccable, is a monumental waste of State Bar and judicial resources. I would dismiss the proceeding.