# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2013 WY 88

*April Term, A.D. 2013*

*July 18, 2013*

| | |
|---|---|
| BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR, <br><br> Petitioner, <br><br> v. <br><br> CYNTHIA K. VAN VLEET, WSB #6-4385, <br><br> Respondent. | D-13-0005 |

## ORDER OF PUBLIC CENSURE

[¶1]     **This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein June 12, 2013, by the Board of Professional Responsibility for the Wyoming State Bar.   The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Cynthia K. Van Vleet should be publicly censured for her conduct, which is described in the attached Report and Recommendation.   It is, therefore,

[¶2]     **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]     **ADJUDGED AND ORDERED** that Cynthia K. Van Vleet is hereby publicly censured for her conduct, which is described in the attached Report and Recommendation for Public Censure; and it is further

[¶4]    **ORDERED** that, on or before December 31, 2013, Ms. Van Vleet shall complete four (4) hours of continuing legal education on the subject of ethics; and it is further

[¶5]    **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Ms. Van Vleet shall reimburse the Wyoming State Bar the amount of $4,697.43, representing the costs incurred in handling this matter, as well as pay the administrative fee of $500.00.  Ms. Van Vleet shall pay the total amount of $5,197.43 to the Clerk of the Board of Professional Responsibility on or before December 31, 2013; and it is further

[¶6]    **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶7]    **ORDERED** that, pursuant to Section 4 of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶8]    **ORDERED** that the Clerk of this Court cause a copy of the Order of Public Censure to be served upon Respondent Cynthia K. Van Vleet.

[¶9]    **DATED** this 18th day of July, 2013.

                                    **BY THE COURT:**

                                    /s/

                                    **MARILYN S. KITE**
                                    **Chief Justice**

BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY
WYOMING STATE BAR
STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JUN 12 2013

CAROL THOMPSON, CLERK
by CHIEF DEPUTY

| | |
|---|---|
| *In the matter of* | ) |
| *CYNTHIA K. VAN VLEET,* | ) |
| *WSB No. 6-4385,* | ) |
| | ) *WSB No. 2012-103* |
| *Respondent.* | ) |
| | ) |

# REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

THIS MATTER having come on for hearing on the 8th day of May, 2012, at the Reach Foundation, 622 N. 8th W, Riverton, Wyoming, before the Board of Professional Responsibility, and the Wyoming State Bar appearing by and through Mark W. Gifford, Bar Counsel, and Respondent appearing in person, and by and through her counsel, Aaron Vincent and John Vincent, and the Board having heard the testimony of witnesses and having reviewed the exhibits received into evidence at the hearing, and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS:

## FINDINGS OF FACT

1. Respondent is a licensed attorney in the State of Wyoming, Bar # 6-4385, and maintains a practice in Riverton, Wyoming.

2. During 2010, Respondent undertook the representation of ▇▇▇▇▇▇▇▇▇ with respect to two matters. The first was a stalking charge against the father of her employer. Respondent undertook Ms. H▇▇▇▇'s representation in early July 2010 and concluded the matter in early September of that year. On or about December 24, 2010, Respondent "ghost wrote" a letter to the EEOC on Ms. H▇▇▇▇'s behalf, which was mailed over Ms. H▇▇▇▇'s signature with a date of December 29, 2010 (Exhibit 4).

3. While Respondent was representing Ms. H▇▇▇▇, Ms. H▇▇▇▇ and her husband, ▇▇▇▇▇▇▇▇▇▇▇ brought to Respondent's office a pro se packet from the Wyoming Supreme Court and requested Respondent's assistance in preparing an uncontested divorce. Re-

spondent claims she explained to both parties that she could not represent them both in a divorce, and that the parties insisted that Respondent represent Mr. H████. On December 30, 2010, Respondent filed a divorce complaint on behalf of Mr. H████ (Exhibit 5).

4.    On April 6, 2011, Respondent filed a motion to withdraw as counsel for Mr. H████ in the divorce proceeding on the ground that a final decree had been entered and there was nothing pending. Judge Young signed an order allowing Respondent to withdraw on April 7, 2011.

5.    Meanwhile, Respondent continued with her representation of Ms. H████ with respect to the EEOC claim. After the employer submitted a position statement in response to the charge, Respondent assisted with the preparation of a response which was submitted to the EEOC on or about May 1, 2011 (Exhibit 11).

6.    On an undetermined date prior to June 8, 2011, Mr. and Mrs. H████ reportedly had a "falling out." On June 8, 2011, Respondent wrote to Mr. and Mrs. H████:

> Re:    Civil Action No. ████ (Divorce matter)
>         EEOC Charge No. ████
>
> Dear ████ and ████:
>
> This letter is to inform you that I cannot represent either of you in the above-referenced matters and that our firm cannot represent you in your post-divorce and/or wrongful termination case. This decision was difficult as you both are good and kind people; however the Rules of Professional Conduct prohibit me from representing either of you when your positions become adverse to one another, which occurred post-divorce.
>
> ████ has some important time limits regarding her wrongful termination matter, and I suggest she call Sheila and we can hopefully refer her to competent legal counsel. ████, if you don't proceed promptly, your legal matter may be adversely affected by a time limit.

See Exhibit 1, Addendum A.

2

7. Mr. H████filed a bankruptcy petition in August 2011, and his counsel submitted a complaint to Bar Counsel in August 2012, claiming in part that Respondent had a conflict of interest in her representation of Mr. and Mrs. H████ After reviewing the complaint, Respondent's response and documents provided by both Complainant and Respondent, Bar Counsel wrote to Respondent:

> [R]epresenting ████████ in a divorce against ██████ while representing ██████ in a separate, unrelated matter is a concurrent conflict of interest as set forth in Rule 1.7(a)(1), Wyoming Rules of Professional Conduct. Before proceeding with the representation, you were required by Rule 1.7(b)(4) to obtain from each client a signed waiver of the conflict. It does not appear you did that. If I am wrong, I trust you'll let me know.

In response, Respondent wrote to Bar Counsel:

> With regards to obtaining from each client a signed waiver of the conflict, I did not mention this before as it was an "empty" argument; but I did, in fact, have both parties sign Waivers. ████████ was adamant that I continue to represent his wife in her EEOC matter. My staff recalls the event, but we could never find the copies. If and/or when they are ever located I would like to have them placed in my WSB file. Being somewhat vindicated is important to me.

Bar Counsel responded:

> I would be interested in any evidence you could provide on the subject of waivers. Do you have unexecuted copies? Will your clients back you on the existence of the waivers? That would make a difference to me.

8. In response to Bar Counsel's inquiry, Respondent produced an affidavit from a former employee who testified that she observed Mr.██Mrs. H████ sign a "Waiver of Conflict of Interest" (Exhibit 12) and Mrs. H████sign a "Consulting Services Agreement/Limited Scope Representation Agreement" (Exhibit 13), but that, "after diligent search I have been unable to locate the originals and/or copies of the Waiver of Conflict of Interest." Those documents are dated May 2, 2011, and May 3, 2011, respectively, long after Respondent undertook the concurrent representation of Mr. and Mrs. H████ in 2010.

3

9. Mr. H████ denies having signed a waiver of conflict of interest. Mr. H████ ███'s testimony in this regard was corroborated by his ex-wife's testimony, who testified that she did not recall signing such a document until sometime in May, 2011. Respondent could only produce computer records reflecting the creation of a possible written waiver in May, 2011.

## CONCLUSIONS OF LAW

10. Bar Counsel has proven by clear and convincing evidence that Respondent violated Rule 1.7, which provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>
>> (4) before proceeding with the representation, each affected client makes an informed decision to waive the conflict, in writing signed by the client.

A concurrent conflict of interest as defined in Rule 1.7(a) existed in the case of Mr. and Mrs. H████ because Respondent undertook to represent Mr. H████ in a matter (the divorce action) directly adverse to another client Mrs. H████ (Respondent's client in the EEOC pro-

4

ceeding). In such a case, Respondent was required by Rule 1.7(b)(4) to obtain each client's informed decision to waive the conflict, in writing signed by the client before proceeding with the representation. This she did not do.

11.     The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA **Standard 3.0** lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.

12.     Respondent's misconduct falls within the heading "Violation of Duties Owed to the Client," which the ABA Standards subcategorize (pertinent to this proceeding) as "Failure to Avoid Conflicts of Interest" (Standard 4.3).

4.3     *Failure to Avoid Conflicts of Interest*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

4.31     Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):
(a)     engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or
(b)     simultaneously represents clients that the lawyer knows have adverse interests with the intent to benefit the lawyer or another; and causes serious or potentially serious injury to the client; or
(c)     represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses

5

information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.

13. The comments to the foregoing standards are instructive. The commentary to Section 4.33 states, "The courts generally impose a reprimand [i.e., public censure] when a lawyer engages in a single instance of misconduct involving a conflict of interest when the lawyer has merely been negligent and there is no overreaching or serious injury to a client. * * * In a multiple representation situation, the court in *Gendron v. State Bar of California*, 35 Cal.3d 409, 673 P.2d 260, 197 Cal.Rptr. 590 (1983), imposed a public reprimand on a public defender who neglected to obtain written waiver of conflict forms from three defendants who were jointly charged with robbery."

14. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

15.   ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1   *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2   *Aggravation*

9.21   *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22   *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3   *Mitigation.*

9.31   *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32   *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

7

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4    *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

16.    In this case, the following aggravating factors are present: (f) deceptive practices during the disciplinary process (Respondent insisted that she had obtained a signed conflict waiver from the clients, but the evidence did not support this); and (g) refusal to acknowledge wrongful nature of process.

17.    The following mitigating factors are present: (a) absence of a prior disciplinary record, (b) absence of a dishonest or selfish motive and (f) in experience in the practice of law.

18.    Applying the ABA Standards to the present case, a public censure for Respondent's conduct is appropriate. Respondent was less than candid and forthright in her responses until the time of the hearing. The representation of Mr. H█████ in the divorce action clearly involved adverse claims against Mrs. H█████ before a tribunal and should not have been undertaken. Moreover, even if the dual representation of the parties was to be permitted, the lack of a written waiver makes it is impossible to determine if the parties were adequately advised of

8

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was served upon Respondent this 12ᵗʰ day of June, 2013, by certified mail, return receipt requested, and correctly addressed as follows:

Aaron J. Vincent
Vincent Law Office
P.O. Box 433
Riverton, WY 82501


Mark W. Gifford, Bar Counsel
Wyoming State Bar
P.O. Box 109
Cheyenne, WY 82003

the problems presented by the proposed property division. Permitting clients to manipulate the legal system, even if well intentioned to avoid expenses, creates problems as evidenced by the proceedings. The failure to avoid the apparent conflict of interest has resulted in injury to the profession.

## RECOMMENDATION

The Board recommends that the Court enter an order:

1.     Administering a public censure to Respondent pursuant to Section 4(a)(iii) of the Disciplinary Code for the Wyoming State Bar, for violating Rules 1.7 of the Rules of Professional Conduct for Attorneys at Law;

2.     Directing Respondent to undergo four (4) hours of continuing legal education in ethics on or before December 31, 2013;

3.     Ordering Respondent to pay the $500 administrative fee required by Section 26(e) of the Disciplinary Code for the Wyoming State Bar, to the Wyoming State Bar, on or before December 31, 2012; and

4.     Ordering Respondent to reimburse the Wyoming State Bar for costs incurred in this matter in the amount of $4,697.43, as supported by the attached Affidavit of Costs and Expenses, on or before December 31, 2013.

RESPECTFULLY SUBMITTED this 10th day of June, 2013.

Jenifer E. Scoggin, Chair
BOARD OF PROFESSIONAL RESPONSIBILITY
WYOMING STATE BAR

9