[L.A. No. 32259. Aug. 13, 1987.]

ROBERT C. KENT, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Robert C. Kent, in pro. per., and Jerry Sanders for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Gael Infande-Weiss for Respondent.

OPINION

**THE COURT.**—In this proceeding we review a recommendation of the Review Department of the State Bar Court that petitioner, Robert C. Kent, be disbarred. He was retained in 1972 to represent plaintiffs in a personal injury action. He applied for a default judgment in 1976, but his dilatory conduct allowed the action to be dismissed in 1979. Meanwhile, he made

repeated false representations to his clients that their legal matter was progressing well. In 1983, the clients were awarded a $330,000 default judgment against petitioner for professional negligence, but he then commenced bankruptcy proceedings in which the judgment debt was discharged.

Petitioner had been publicly reproved by the State Bar Disciplinary Board in 1974 and again in 1975 for failing to prosecute claims while falsely reassuring his clients that he was doing so. In 1982, this court ordered petitioner placed on probation for four years, with one year actual suspension from practice, for similar failures to perform promised legal services between 1976 and 1979.

Petitioner urges in mitigation that he and his spouse each suffered life-threatening medical conditions at various times from 1976 to 1980, and that he has been candid and cooperative with the State Bar. Nonetheless, his record discloses a pattern of willfully failing to perform services for which he was retained, as well as repeated misrepresentations to his clients that the services were being performed. Accordingly, we conclude that he should be disbarred.

In October 1985 petitioner and the State Bar examiner met with a settlement referee at a mandatory settlement conference (State Bar Court Rules, rule E.2.), and in December 1985 they entered into a stipulation of facts and admissions dispensing with proof (Rules Proc. of State Bar, rule 401). The stipulation set forth the agreed facts and declared that petitioner thereby had violated sections 6068, 6103, and 6106 of the Business and Professions Code, and rules 2-111(A)(2) and 6-101(A) (former rule 6-101(2)) of the Rules of Professional Conduct. Finally, the stipulation submitted the issue of discipline to a hearing panel consisting of the settlement referee.

By decision filed January 3, 1986, the referee approved and accepted the stipulation and recommended that petitioner be placed on probation for three years, with actual suspension from practice for ninety days. The review department, after hearing oral presentations by petitioner and the State Bar examiner, resolved unanimously in July 1986 that petitioner should be disbarred, stating as its reasons that petitioner "abdicated his duties toward his clients, substantially harmed his clients, engaged in deceit, has been disciplined three times previously and still fails to appreciate the severity of his misconduct."

Petitioner was admitted to the practice of law in California in June 1969. He was employed in August 1972 to represent Mr. and Ms. Sutenski in a claim for personal injury in an automobile accident. He filed a timely action

in Los Angeles in August 1973, but did not serve the defendant until nearly two years later. A default judgment was applied for in June 1976, but the default was set aside six months later because of petitioner's lack of diligence in proving up the claim. Petitioner prejudiced his clients' rights by being dilatory in responding to opposing counsel's inquiries and discovery efforts. The action was dismissed in March 1979 for failure to bring it to trial within five years of its filing.

The Sutenskis made numerous attempts to telephone petitioner about the matter from 1972 through early 1981. Petitioner failed to respond to many of these inquiries. He responded to others by intentionally deceiving his clients, telling them that their legal matter was progressing well and that they had nothing to worry about. He ultimately informed them of the dismissal after postponing doing so because of his belief that immediate disclosure would adversely affect Mr. Sutenski's health. In September 1981, the Sutenskis sued petitioner for fraud and professional negligence and, in March 1983, obtained a default judgment against him for $330,000. He immediately commenced bankruptcy proceedings in which this judgment debt was discharged.

The first of the State Bar's two prior public reprovals of petitioner was rendered in January 1974 and was based on findings pertaining to two matters: In the first matter, petitioner was retained by a client in October 1970 to sue a defendant who had purported to sell the client a stolen automobile. The client advanced $60 for costs. During 1970, 1971, and 1972 petitioner repeatedly and willfully made false representations to the client that the complaint had been filed. In May and August of 1972 petitioner addressed letters to the client stating that the $60 was being returned. In fact no checks were enclosed because of clerical errors in petitioner's office. In the second matter, petitioner was retained in May 1970 for stepparent adoption proceedings. He failed to complete the proceedings and yet willfully and falsely represented to the clients that the proceedings would be concluded within specified times.

The second public reproval, imposed in July 1975, arose out of petitioner's employment in March 1970 to represent a client in respect to a personal injury claim. He repeatedly told the client and her husband that the claim was progressing satisfactorily, and on at least one occasion he told the husband that an action had been filed. Petitioner knew that these representations were false since he had wholly neglected the matter. The statute of limitations ran on the claim in March 1971. Though realizing his failure to file a timely action, petitioner continued to tell the client that he was taking care of the matter, and that it was under control, until after she complained to the State Bar in April 1973.

This court's order of April 1982, placing petitioner on probation for four years with actual suspension from practice for one year, was based on a stipulation as to facts and discipline adopted by the State Bar Court. (See Rules Proc. of State Bar, rules 405-408.) The stipulation covered two consolidated proceedings, each pertaining to a single client.

In the first proceeding, Mr. Schubert complained of petitioner's failure to perform legal services in four matters. In two of these, Schubert employed petitioner in the latter part of 1976 to represent him in pending municipal court actions, one against Smith to recover $2,450 for carpentry work and the other against Jensen to recover $5,100 for painting. Petitioner reviewed the files but did nothing else in the matter. He would have testified that based on this review, he advised Schubert to abandon the Smith claim and did not encourage him to pursue the claim against Jensen. Schubert would have contradicted that testimony, asserting that on several occasions he spoke with petitioner about the Smith and Jensen matters and that petitioner told him not to worry because everything was fine.

Also in the latter part of 1976, Schubert retained petitioner to sue Green for $3,100 owed on a personal loan. Petitioner obtained entry of a default judgment in June 1977 but did nothing further. He would have testified that he and Schubert had agreed that it would be Schubert's responsibility to obtain information about assets out of which the judgment could be enforced, that he requested such information from Schubert, and that Schubert failed to furnish it.

Finally, Schubert would have testified that his employment of petitioner in late 1976 included a collection claim against Russo, that he furnished petitioner the necessary documentation, and that petitioner failed to perform any services or communicate with Schubert on the subject. Petitioner would have categorically denied being employed in the Russo matter.

On July 31, 1978, Schubert employed Attorney Nord to take over his representation in the Smith, Jensen, Green, and Russo matters. The next day, Nord wrote to petitioner, stating that Schubert had employed him and requesting the pertinent files. On August 17, petitioner talked with Nord by telephone and promised to mail him the Smith, Jensen, and Green files that day. Between then and October 26, Nord telephoned petitioner about 10 times and wrote to him twice to request the promised files. Petitioner willfully failed to respond to those calls and letters until the State Bar preliminary hearing in September 1979, when he did turn over the Smith, Jensen, and Green files. Petitioner would have testified that he delayed forwarding the Smith and Jensen files because they were misplaced during a move of his office.

The second State Bar proceeding underlying this court's April 1982 disciplinary order arose out of petitioner's representation of Mr. Knittle in an automobile accident personal injury claim, pursuant to a written contingent-fee agreement dated December 2, 1976. Petitioner willfully failed to file suit before expiration of the statute of limitations. Between December 1976 and July 1979, Knittle made numerous inquiries of petitioner about the status of the case. Most of those inquiries went unanswered, and when petitioner did return a call, he usually indicated there was nothing to report. According to Knittle, petitioner told him in late 1978 or early 1979 that the insurance carrier was offering $500 to settle, then a week later that the carrier was offering $800. Knittle rejected both offers. Petitioner denied stating that either offer emanated from an insurance carrier and asserted that he told Knittle the offers were being made to settle any liability which petitioner might have for failing to file a timely action. In July 1979 Knittle consulted Attorney Helman about taking over the case. Helman wrote a letter and made numerous telephone calls to petitioner's office. Petitioner returned one call stating that he would check his file and get in touch with Helman. Otherwise he did not respond.

Petitioner concedes he is subject to discipline but contends that the review department's recommendation of disbarment is too severe. Under the heading, "Conclusions of Law," petitioner's stipulation with the State Bar examiner declared that by the stipulated facts, petitioner willfully and intentionally committed the following misconduct: (1) failed to use the skill and diligence necessary to perform the services for which he had been employed (Rules Prof. Conduct, rule 6-101(A), former rule 6-101(2)); (2) repeatedly failed to communicate with his client (*ibid.*); (3) withdrew from his employment without taking reasonable steps to avoid foreseeable prejudice to his clients' rights (Rules Prof. Conduct, rule 2-111(A)(2)); (4) committed acts of moral turpitude by intentionally deceiving his clients (Bus. & Prof. Code, § 6106); and (5) violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6068, 6103). Though we may relieve petitioner from the binding effect of these stipulated conclusions because he did not agree to the recommended discipline (*Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852]), he does not challenge them, and in any event they are correct.

■ "While giving great weight to the State Bar's recommendation, we exercise our independent judgment in determining the appropriate degree of discipline to be imposed. [Citation.]" (*Warner* v. *State Bar* (1983) 34 Cal.3d 36, 43 [664 P.2d 148].) "Determination of discipline turns upon several considerations, including the protection of the public, the promotion of confidence in the legal profession, and the maintenance of professional standards. [Citation.] Petitioner bears the burden of demonstrating that, in

light of these objectives, the recommendation of the review department is erroneous. [Citation.]" *(Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 131 [192 Cal.Rptr. 866, 665 P.2d 956].)

▇ Petitioner has failed to meet that burden. ▇ "[H]abitual disregard by an attorney of the interests of his or her clients combined with failure to communicate with such clients constitute acts of moral turpitude justifying disbarment. [Citations.]" *(McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431]; accord *Schullman* v. *State Bar* (1976) 16 Cal.3d 631, 635 [128 Cal.Rptr. 671, 547 P.2d 447]; *Ridley* v. *State Bar* (1972) 6 Cal.3d 551, 560-561 [99 Cal.Rptr. 873, 493 P.2d 105]; *Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729-732 [87 Cal.Rptr. 368, 470 P.2d 352]; *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 683-684 [58 Cal.Rptr. 564, 427 P.2d 164].) In *McMorris* we ordered disbarment of an attorney who had failed to perform services for which he had been retained and to respond to client inquiries in seven separate matters involving five clients. He had previously been suspended for at least four similar derelictions. In three of these matters he had failed to refund retainer fees of $200 or $500. *(Id.* at pp. 79-80; *McMorris* v. *State Bar* (1981) 29 Cal.3d 96 [171 Cal.Rptr. 829, 623 P.2d 781].)

▇ The misconduct of petitioner disclosed in this and the prior proceedings wronged six clients—fewer than the number affected in *McMorris* — and did not include failure to refund fees. On the other hand, the magnitude of the Sutenskis' $330,000 malpractice judgment against petitioner demonstrates that his mishandling of their case caused a major loss. Even more important from the standpoint of discipline, he not only abandoned the legal interests of his clients but in some instances actively deceived them by misrepresenting that he was properly rendering the services for which he had been employed.[1] Such deceit is reprehensible. It violates the attorney's highest duty of fidelity to his or her clients and warrants the conclusion that the attorney is not entitled to be recommended to the public as worthy of trust. *(Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 935-936 [92 Cal.Rptr. 278, 479 P.2d 638].)

The review department gave as one of its reasons for recommending disbarment that petitioner "still fails to appreciate the severity of his mis-

---

[1] At the review department hearing, the State Bar examiner correctly stated that both the present proceeding and the public reprovals of 1974 and 1975 involved petitioner's repeated deceit of clients. But the examiner's description of the prior case in which this court suspended petitioner in 1982 as one involving "three deceits to clients" was overly broad. There was no finding of any deceitful statement by petitioner to Schubert; the stipulation merely established that Schubert claimed, and petitioner denied, that Schubert was deceived. In the Knittle matter, there was a stipulated finding that petitioner told Knittle there was nothing to report even after allowing the statute of limitations to become a bar to commencement of an action. There was no other finding of deceit underlying our 1982 suspension order.

conduct." Petitioner challenges this reason as not supported by the evidence. But petitioner appeared before the review department, whose members thus were able to question petitioner and observe his demeanor. He attributed his wrongdoing to his not knowing "how to operate an office," ignoring the fact that his misconduct was willful, not merely negligent. When asked whether his clients lost any money from his misconduct, he replied, "Not cash out of pocket," explaining that the loss was of their right to a default judgment in a personal injury matter. Asked whether the clients had been reimbursed, he answered, "As far as I know, no sir," expressing no concern over any hardship his clients might suffer from lack of compensation for their injuries.

He now argues that he refrained from interfering with his clients' obtaining a default judgment against him based on their professional negligence claim, and that he cannot be penalized for using the bankruptcy proceedings to give himself a fresh financial start. (See *Grimes* v. *Hoschler* (1974) 12 Cal.3d 305 [115 Cal.Rptr. 625, 525 P.2d 65] [statute purporting to authorize revocation of license of contractor who obtains bankruptcy discharge held preempted by Bankruptcy Act].) Neither the State Bar nor this court is penalizing petitioner for obtaining a discharge of his debts in bankruptcy.[2] ■ While voluntary efforts to make restitution may be a mitigating factor (*Athearn* v. *State Bar* (1977) 20 Cal.3d 232, 237 [142 Cal.Rptr. 171, 571 P.2d 628]; *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449]; *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 388 [90 Cal.Rptr. 420, 475 P.2d 652]), the lack of such efforts is not in itself an affirmative basis for discipline. ■ The fact remains that petitioner's misconduct has caused his clients' severe financial loss.

Petitioner asserts illnesses of himself and his wife as mitigating circumstances. In the latter part of 1976 he was hospitalized for severe food poisoning. In November 1976, his wife was hospitalized, following one and a half years of complaints, and diagnosed as suffering from Hodgkin's disease, a form of cancer. She was successfully treated with radiation over a

---

[2] Petitioner's stipulation with the State Bar examiner includes under the heading, "Facts in Mitigation of Discipline," statements that the clients' $330,000 judgment against petitioner "was one of a number of [petitioner's] major financial obligations," and that "[petitioner] and his spouse had incurred major medical bills and [petitioner] did not seek to discharge his debts in bankruptcy in order to terminate his financial accountability for prior acts of professional negligence." The stipulation then refers to an attached exhibit in which petitioner named the unsecured creditors listed in his bankruptcy petition.

The exhibit, however, indicates that petitioner's discharged debts not arising out of professional negligence were insignificant in comparison with those that did. Named in addition to the $330,000 judgment creditors were six entities whose claims aggregated only $18,177, plus three persons with claims of unknown amounts, two of whom had names matching those of client-victims in the prior disciplinary proceedings against petitioner.

six-month period. As a result of these illnesses, petitioner was away from his practice for two months in 1976 and intermittently away during his wife's radiation treatment. In 1978, petitioner was away from his office for one month for gall bladder surgery. During that absence his office was moved to another location in the same building. In 1979 petitioner underwent quadruple coronary arterial bypass surgery. He did not resume practice until after completion of his suspension, which, according to our April 1982 order, lasted until May 1983.

The timing of these illnesses precludes their affecting much of the misconduct in petitioner's record. In the Sutenski matter, which underlies the present proceeding, petitioner filed the complaint in August 1973, served the defendant in 1975, applied for a default judgment in June 1976, and apparently did nothing further until the action was dismissed in March 1979 for failure to bring it to trial. Though the illnesses might have had a bearing on petitioner's failure to respond to some of the Sutenskis' telephone calls, they could not excuse his intentionally deceiving them by telling them their legal matter was progressing well.

Nor could the illnesses have affected the failures to perform services and deception of clients for which petitioner was publicly reproved in 1974 and 1975, since all of that misconduct occurred between 1970 and 1973. Petitioner's intermittent, illness-related absences from his office in 1976, 1977, and 1978 could have had a bearing on some aspects of the neglect of his obligations towards Mr. Schubert and Mr. Knittle, underlying our suspension order of April 1982, but they cannot excuse his continuous failure to act during that period.

The recommendation of disbarment is consistent with the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) adopted November 22, 1985, by the State Bar Board of Governors to apply to all disciplinary matters, such as this one, in which the hearing panel decision or stipulation was filed after January 1, 1986. The stated purposes of these standards are to implement the purposes of attorney discipline as announced by this court, to achieve greater consistency in sanctions for similar offenses, and to identify for the bar, bench, and public the relevant factors and how they may lead to selection of the sanction.

Standard 2.4(a) states: "Culpability of a [State Bar] member of a *pattern* of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained shall result in disbarment." (Italics added.) Standard 1.7(b) states: "If a member is found culpable of professional misconduct . . . and the member has a record of two prior impositions of discipline . . . , the degree of discipline in the current

proceeding shall be disbarment unless the most compelling mitigating circumstances clearly predominate." The three prior disciplinary proceedings against petitioner (1) demonstrate that his abandonment of his client's cause in the present proceeding was part of a pattern, not an isolated instance (std. 2.4(a)), and (2) constitute in themselves a reason for disbarment since there are no compelling mitigating circumstances (std. 1.7(b)). Moreover, standard 2.3 declares that fraud or intentional dishonesty toward a client, or concealment of a material fact from a client, may result in actual suspension or disbarment, depending on the extent of harm to the victim, the magnitude of the misconduct, and the degree to which it relates to the member's law practice. Petitioner's deceit of clients with respect to the status of their legal matters was grave misconduct going to the heart of his professional responsibilities and causing, in at least one instance, a substantial loss to the client evidenced by a default judgment for $330,000.

Accordingly, it is ordered that petitioner Robert C. Kent be disbarred from the practice of law and that his name be stricken from the roll of attorneys. It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.