[S.F. No. 25101. Sept. 8, 1987.]

RUDY D. GUZZETTA, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

964

**COUNSEL**

Edward S. Miller for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Mara Mamet for Respondent.

## OPINION

**THE COURT.**—The Review Department of the State Bar Court recommends that petitioner Rudy D. Guzzetta be suspended from the practice of law for a period of three years; that execution of the order be stayed; and that petitioner be placed on probation for a period of three years on conditions which include an actual suspension of six months, restitution of $1,819, various reporting provisions, and supervision by a probation monitor.

The recommendation is apparently based on findings and conclusions of the hearing panel, adopted in their entirety by the State Bar Court, that petitioner had commingled and failed to properly account for trust funds held by him in the "Gonzalez matter," and had withdrawn from employment without taking reasonable steps to avoid prejudice to his client and failed to perform legal services competently in the "Hernandez matter."

Upon review of the record generated by the State Bar Court we conclude that petitioner's conduct warrants the recommended discipline including six months' actual suspension. Although that record does not support all of the findings of the State Bar, the violations of the statutes and rules governing attorney conduct which are adequately proven alone support the recommended discipline. In addition, the recommendation is consistent with the guidelines for disciplinary sanctions which the State Bar has recently promulgated in an effort to achieve greater consistency in the imposition of sanctions. (See *Kent* v. *State Bar* (1987) *ante*, pp. 729, 737 [239 Cal.Rptr. 77, 739 P.2d 1244].)

The guidelines—officially titled "Standards for Attorney Sanctions for Professional Misconduct" (Standards) —were adopted by the Board of Governors of the State Bar in November 1985, and went into effect on January 1, 1986. In adopting the Standards, the Board of Governors pointed out that "[a] comprehensive set of written standards for imposing an attorney disciplinary sanction has never before existed in this state," and noted that, in the past, "a wide variety of disciplinary sanctions have been imposed for a given offense." (Introduction to Standards for Atty. Sanctions for Prof. Misconduct, State Bar of Cal., Nov. 22, 1985.) The guidelines were an attempt to remedy this situation, and, in promulgating them, the board expressed its hope that the Standards would "achieve greater consistency in disciplinary sanction for similar offenses" and "identify for the legal profes-

sion, the courts and the public the factors which may appropriately be considered for imposing discipline on an attorney and to set forth an appropriate means by which those factors may lead to the selection of a sanction in a particular case." (*Ibid.*)

■ In *Greenbaum* v. *State Bar* (1987) *ante*, pp. 543, 550-551 [237 Cal.Rptr. 168, 736 P.2d 754], we recently noted that the new guidelines may properly be considered in assessing the appropriate disciplinary sanction even for conduct predating the Standards. ■ While *Greenbaum* also makes it clear that the State Bar's guidelines are not binding on this court (*id.*, at p. 550), in the past we have frequently indicated that the State Bar's recommendation as to discipline is entitled to "great weight" (see, e.g., *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 709 [224 Cal.Rptr. 738, 715 P.2d 699]; *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139]).

■ This court relies heavily on the findings, conclusions, and recommendations of the State Bar Court in disciplinary proceedings. (*Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 916 [180 Cal.Rptr. 831, 640 P.2d 1106].) We do not hesitate to impose the recommended discipline when we are presented with a record adequate to support the recommendation. (See, e.g., *Mepham* v. *State Bar* (1986) 42 Cal.3d 943 [232 Cal.Rptr. 152, 728 P.2d 222].) In this case, however, the state of the record is such that we are able to uphold only the violations of rules 6-101(A)(2) and 8-101 found by the State Bar. The record is otherwise deficient with respect to both the findings and the conclusions reached therein. Neither the charges, nor the ultimate findings and conclusions in the instant record relates the conduct charged as violations of petitioner's duties as an attorney to the statutes or Rules of Professional Conduct that the State Bar concludes have been violated.[1] ■■■ Questions of credibility have not been resolved and instead are presented as "findings" that a conflict exists.[2] Finally, in this case we are

---

[1] Not only does this failure make the work of this court more difficult since we are forced to determine the basis for the recommended discipline by deductive reasoning, but it also brings into question the adequacy of the notice given to an attorney of the basis for the disciplinary charges. (See *Gendron* v. *State Bar* (1983) 35 Cal.3d 409, 420 [197 Cal.Rptr. 590, 673 P.2d 260]; *Woodard* v. *State Bar* (1940) 16 Cal.2d 755, 757 [108 P.2d 407].)

[2] We have recognized repeatedly that when conflicting testimony is offered at a disciplinary hearing, the hearing officer or panel is in the 'better position to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony.' (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993]. See also *Prantil* v. *State Bar* (1979) 23 Cal.3d 243, 246 [152 Cal.Rptr. 351, 589 P.2d 859]; *Martin* v. *State Bar* (1978) 20 Cal.3d 717, 721 [144 Cal.Rptr. 214, 575 P.2d 757]; *Lee* v. *State Bar* (1970) 2 Cal.3d 927, 940 [88 Cal.Rptr. 361, 472 P.2d 449].) If the hearing panel or officer is unable to assess the relative credibility of the witnesses whose testimony conflicts, the doubt should be resolved in favor of the attorney since the burden in the disciplinary hearing is on the State Bar to establish by clear and convincing evidence that discipline is warranted. (*Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 451 [55 Cal.Rptr. 228, 421 P.2d

unable to ascertain the basis upon which the State Bar Court has concluded that the conduct it found did occur violated some of the statutes and rules it relies upon. ■ ■■ If the State Bar and this court are to carry out their responsibilities to the public to ensure that members of the State Bar are both competent and morally qualified to practice, it is essential that the records offered in support of the disciplinary recommendations be adequate to permit this court to act upon those recommendations.[3] We are confident, however, that these concerns, having been called to the attention of the State Bar Court, the problem will not recur.

Petitioner was charged with violating the Rules of Professional Conduct in his representation of Manuel Gonzalez from November 1981 through June 1983, and in his representation of Ramon Hernandez in 1979. The order to show cause charged that petitioner had violated Business and Professions Code sections 6068[4] and 6103.[5] It also charged violations of the

76].) When the hearing panel and review department report only that the testimony is conflicting, this court is presented with a record of insoluble ambiguity. We cannot ascertain whether the State Bar cannot resolve, or if it simply has not resolved, the credibility question.

[3] Our difficulty in relating the findings in this case to the conclusions is made more difficult here by the assertion of counsel for the State Bar at oral argument that the State Bar had not found that petitioner misappropriated client funds. The findings include a withdrawal from the client trust fund of $1,000 to pay petitioner's fee without authorization from the wife of petitioner's client although he held the funds in trust for her as well as the client. The findings also include a payment made when part of the payment necessarily came from funds belonging to client Gonzalez and his wife, but the payment was to Dorothy Hary, another client who had no funds in the trust account. Perhaps the State Bar chose not to base its recommended discipline on "misappropriation" because it did not find this conduct to be willful. Nonetheless, even negligence in misdirecting client funds constitutes misappropriation and warrants discipline. (See *Schultz* v. *State Bar* (1975) 15 Cal.3d 799, 803 [126 Cal.Rptr. 232, 543 P.2d 600].)

[4] All statutory references herein are to the Business and Professions Code.

Section 6068, insofar as it is relevant, recites the duty of an attorney: "(a) To support the Constitution and laws of the United States and of this state.

"(b) To maintain the respect due to the courts of justice and judicial officers.

"(c) To counsel or maintain such actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense.

"(d) To employ, for the purpose of maintaining the causes confided to him or her such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.

"(e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his or her client.

"(f) To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged.

"(g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.

"(h) Never to reject, for any consideration personal to himself or herself, the cause of the defenseless or the oppressed."

[5] Section 6103: "A willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in

Rules of Professional Conduct, rules 2-111(A)(2),[6] 6-101(2),[7] 8-101(A),[8] and 8-101(B)(4).[9]

The basis stated in the order to show cause for the charges as to the Gonzalez matter related to petitioner's handling of $7,630.92 received by his client Manuel Gonzalez from the sale of a restaurant owned by Gonzalez, and in which Gonzalez's wife claimed an interest. Petitioner represented Gonzalez in a dissolution proceeding. Whether the funds were the community property of Gonzalez and his wife Camila was disputed. Pursuant to an agreement between petitioner, Gonzalez, his wife Camila, and her attorney, Robert Gonzales the funds were to be withdrawn only on court order or stipulation of the parties. Allegedly petitioner failed to maintain a sufficient balance in his trust account to cover the funds, misappropriated the difference to his own use, deposited $1,330.27 belonging to him and/or his law firm into the trust account, failed to maintain complete records of the funds or to obey an order of the court that he account for the funds and to make required court appearances, and failed to return to Gonzalez or his wife the monies owed to them.

In the Hernandez matter, petitioner had been retained to seek specific performance or damages flowing from the failure of the seller to perform under a contract to sell real property to his client. He was charged with failing to take any substantive action on behalf of Hernandez, and thereby to have failed to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to

good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

[6] All rules references herein are to the Rules of Professional Conduct of the State Bar.

Rule 2-111(A)(2) provides that "a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

[7] Rule 6-101(2), in effect at the time of the charged misconduct, provided: "A member of the State Bar shall not willfully or habitually . . . [¶] (2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed.

"The good faith of an attorney is a matter to be considered in determining whether acts done through ignorance or mistake warrant imposition of discipline under Rule 6-101."

[8] Insofar as relevant here, rule 8-101(A) requires that funds held for the benefit of clients shall be deposited in bank trust accounts, and that "no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith" except funds to pay bank charges, or funds belonging in part to the client and in part to the member of the State Bar or his firm.

[9] Rule 8-101(B)(4) requires that a member of the State Bar "Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the member of the State Bar which the client is entitled to receive."

accomplish, with reasonable speed, the purpose for which he had been employed, with withdrawing from employment, and with violating his oath and duties as an attorney.

Petitioner has been a member of the State Bar since 1974. He has no prior record of discipline.

Petitioner seeks review by this court and urges that we reduce the discipline to public reproval, or in lieu thereof, that petitioner be suspended from law practice for six months, that execution of suspension be stayed, and that petitioner be placed on probation for six months with no actual suspension from law practice. Petitioner argues that probationary supervision of client funds would suffice to protect the public in light of mitigating factors.

We exercise our independent judgment in determining bar discipline. However, "'the State Bar's recommendation as to discipline is entitled to great weight . . . [and] . . . [o]ur principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys.'" (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82], quoting *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47].) Accordingly, while not all of the conclusions of the review department are supported by the record, we conclude that the recommended six-month suspension is appropriate in light of petitioner's conduct in mishandling the client trust account, failing to maintain adequate records and to account for trust funds, and failing to make prompt payment of funds in the Gonzalez matter, and in failing to perform the services for which he was retained in the Hernandez matter.

I. THE GONZALEZ MATTER

Prior to November 1981 petitioner was employed by Manuel Gonzalez to represent him in a dissolution proceeding in the Superior Court of San Mateo County. Attorney Gonzales represented Manuel's wife, Camila. Camila Gonzalez listed as one of the community assets in the dissolution proceedings a restaurant called "Taqueria Gonzalez." The restaurant had been sold prior to November 20, 1981, for $13,630.92. Petitioner, Attorney Gonzales, and Camila and Manuel Gonzalez orally agreed that from the total of $13,630.92, Camila and Manuel would each receive $3,000, and the balance of $7,630.92 would be deposited in petitioner's trust account. The initial balance in the trust account for the period ending November 20, 1981, was $112.47. On November 23, 1981, petitioner deposited the sum of $7,630.92 into the trust account.

On November 30, 1981, petitioner sent a letter to the Wells Fargo Escrow Department stating that $6,000 of the escrow funds were to be divided between Manuel and Camila and the balance was to be placed in petitioner's trust account. No instructions were given for the distribution of the $7,630.92. A copy of this letter was sent to Attorney Gonzales, who added the language "to be later distributed pursuant to Court Order," signed the letter, had Camila sign the letter, and then returned it to petitioner. Upon receiving the returned letter of November 30, 1981, petitioner added the words, "or mutual stipulation of the parties."[10]

Next followed a series of disbursements from the Gonzalez trust funds, some of which the trial court in the dissolution action, and later the review department in these proceedings found to have been unauthorized, and not completely or accurately accounted for once petitioner finally gave an accounting under court order. These disbursements are listed by check number.

*Check No. 105*: On November 29, 1981, petitioner prepared a check from the trust account payable to himself, Rudy D. Guzzetta, in the amount of $1,000. This money was for his fees, although petitioner acknowledged in the State Bar Court hearings that he had nothing in writing from anyone or any court authorizing the payment. Petitioner claimed, however, that Attorney Gonzales orally authorized the payment; Attorney Gonzales denied learning of the payment until the day of the State Bar hearing.

*Check No. 106*: On November 30, 1981, petitioner prepared a check from the trust account payable to Allstate Savings and Loan Association (Allstate), in the amount of $1,077.06. Apparently this payment was for the mortgage on the Gonzalez residence. Petitioner acknowledged that there was no written court order or stipulation authorizing payments on the family residence. Attorney Gonzales apparently agrees that the Allstate payments were for the mortgage on the family residence, although initially he denied that he had ever authorized the payments. Later, however, Attorney Gonzales conceded that this and one later mortgage payment (check No. 108) must have been authorized by his client and himself.

*Check No. 107*: On December 17, 1981, petitioner prepared a check on the trust account payable to the husband, Manuel Gonzalez, in the amount

---

[10] Petitioner was therefore aware of Attorney Gonzales's addition to the letter. Petitioner testified that he did not know whether or not he sent Attorney Gonzales a written copy of the agreement with petitioner's last modification, although he said that he discussed it orally with him. Attorney Gonzales testified that petitioner did not speak with him or write to him about adding the final modification "mutual stipulation of the parties" to the letter. Neither the hearing officer nor the review department resolved this conflict.

of $1,810.50. Petitioner again conceded that there was nothing in writing authorizing this payment, and testified that the payment was to enable husband Gonzalez to buy furniture, as Camila Gonzalez had taken all the furniture. Manuel Gonzalez also testified that the payment was for the purchase of furniture. Attorney Gonzales denied authorizing any payments other than the two mortgage payments, checks No. 106 and No. 108.

*Check No. 108*: On December 30, 1981, petitioner prepared a check on the trust account payable to Allstate in the amount of $1,109.59, which was a second mortgage payment and apparently authorized orally by Attorney Gonzales.

*Check No. 110*: On December 29, 1981, petitioner prepared a check on the trust account payable to Wells Fargo Bank in the amount of $1,104.79. Petitioner took the proceeds and purchased a cashier's check in the same amount payable to Bank of the West. This cashier's check was delivered to Manuel Gonzalez. Husband Gonzalez testified that this money was used to make a payment on the residence mortgage, although it was never fully shown that the money went to Allstate, nor was it explained why a mortgage payment needed to be made through a cashier's check or why two mortgage payments had to be made in two successive days.

*Check No. 111*: On January 26, 1982, petitioner prepared a check on the trust account payable to Allstate in the amount of $1,077.66. This was a third mortgage payment; it is not clear from the record whether Attorney Gonzales knew about or orally authorized this payment, although he conceded authorizing the earlier two.

Following these debits from the trust account, the original Gonzalez trust amount had declined from $7,630.92 to $541.32. That is to say, $7,089.60 had been disbursed. Prior to depositing the Gonzalez money in the trust account on November 23, 1981, petitioner had a trust account balance of $112.47. For the period ending January 22, 1982, just prior to disbursement of check No. 111 in the amount of $1,077.66, the trust account had a total credit balance of $1,731.45.

Petitioner made no deposits to the trust account other than the original Gonzalez money between November 23, 1981, and August 24, 1982. On October 15, 1981, however, petitioner deposited to his general (not trust) account a check from Andre Hary (Dorothy) in the amount of $750.

*Check No. 112*: On January 22, 1982, petitioner prepared a check on the trust account payable to Dorothy in the amount of $550. It is undisputed that petitioner had no written or oral authorization from Attorney

Gonzales, Camila Gonzalez, or Manuel Gonzalez or a court order to make this payment to Dorothy. Since the trust account originally had held only $112 of non-Gonzalez family funds, and no non-Gonzalez deposits had been made, the payment was almost entirely from the Gonzalez family trust monies.

*Check No. 113*:[11] On August 20, 1982, petitioner prepared a check on the trust account payable to Camila Gonzalez in the amount of $1,400. The check was postdated to August 24, 1982. This amount was disbursed to Camila with the authorization of petitioner, Attorney Gonzales, Camila Gonzalez, and the court. In order to cover the amount of this postdated check, however, on August 25, 1982, petitioner drew a check on his partnership account in the amount of $1,030.27 as well as a check on his personal account in the amount of $300 and deposited both checks to the trust account. Petitioner contends that the review department finding in this regard is incomplete and misleading because it does not reflect the undisputed evidence that all parties were aware when the check was drawn that there were insufficient funds in the account to cover it. This evidence consisted of the testimony of petitioner that the check was drawn during a court appearance, and that he had told the court, Camila, and Camila's attorney that his client was going to deposit $1,000 in the trust account, and that if he was unable to do so, petitioner would deposit sufficient money of his own to cover the check. Petitioner's client also testified that he had agreed to make the $1,000 deposit if he was able to do so. Petitioner conceded, however, that one reason for his agreement to make the deposit was the insistence of Camila's attorney that the check previously drawn on the account by petitioner to pay petitioner's fees should be reimbursed.

During the period of time from November 1981 to November 1982, Attorney Gonzales requested numerous times that petitioner provide him with a written accounting of the Gonzalez money in the trust account. On November 15, 1982, the superior court in the Gonzalez dissolution proceeding issued an "order after Interlocutory Hearing," which required, inter alia, that petitioner account for the funds in the trust account as well as providing that husband Gonzalez "account for all funds derived from the sale of the family restaurant." During the period from November 1981 to November 1982, however, petitioner provided no written accounting to Attorney Gonzales or the court. Between November 8, 1982, and December 16, 1982, Attorney Gonzales made four written demands for an accounting as well as copies of all cancelled checks. In a letter to Attorney Gonzales dated November 11, 1982, petitioner refused to provide an accounting until he saw a copy of the court order.

[11] Both the State Bar brief and State Bar Court have incorrectly identified this as check No. 112.

On June 23, 1983, the superior court ordered petitioner to file a complete accounting with Attorney Gonzales and with the court on or before August 8, 1983. Petitioner failed to provide such an accounting. Instead, on August 9, 1983, he sent a letter to Attorney Gonzales which purported to give an accounting of funds received and disbursed. That letter listed four payments to Allstate, a payment to Manuel Gonzalez for furniture, and the $1,400 payment to Camila Gonzalez. No mention was made of the disbursement to petitioner for his fee, the disbursement to Dorothy, or the Bank of the West cashier's check. The State Bar Court concluded that this letter failed to qualify as an accounting under the court order of June 23, 1983, as it failed to "make material disclosure of funds expended, to whom, amounts and dates of expenditure."

Petitioner challenges some of the factual findings of the review department and disputes their relevance to determining the appropriate discipline. In particular he questions the finding that there was no oral or written stipulation by Attorney Gonzales or court order authorizing the withdrawal of the $1,077.06 paid to Allstate on November 30, 1981, and that there was no written stipulation or court order for the December 30, 1981, payment of $1,019.59 to Allstate.[12] His objection is not so much to the findings themselves, however, as to the review department's conclusion that the approval of his client and Camila Gonzalez was not sufficient authorization for the withdrawals. We need not decide whether, notwithstanding Attorney Gonzales's testimony that he did not agree to the addition of the "mutual stipulation of the parties" as a basis for disbursements from the trust account, petitioner reasonably believed that

---

[12] Petitioner claims that erroneous evidentiary rulings by the hearing officer prejudiced him in his ability to impeach Attorney Gonzales. We find no merit in this claim. He first argues that the State Bar was improperly permitted to impeach him with a deposition that he had not been afforded prior opportunity to review and correct. The hearing officer did permit him to review the document prior to responding to the examiner's question regarding his knowledge that Camila Gonzalez had been required to sign the escrow papers related to the sale of the restaurant. He made no claim then, and makes none now, that his deposition response had been transcribed incorrectly.

Petitioner also contends that his cross-examination of Attorney Gonzales was improperly restricted, thus impairing his ability to demonstrate the bias of that witness. The hearing officer sustained an objection based on relevancy to petitioner's attempt to establish that Attorney Gonzales was "unhappy" with him as a result of a deposition taken of petitioner in an unrelated domestic relations case. Even assuming there was error in the ruling sustaining the objection, we see no prejudice since petitioner's counsel successfully persisted in his attempt to elicit a response. It was a denial of any personal feeling or bias toward petitioner.

Finally, petitioner claims he was unduly restricted in presenting evidence of his reputation for candor and veracity. The record confirms, however, that the witness, a municipal court judge, was permitted to and did testify both that in his opinion petitioner was a person of high integrity and that he had a reputation of high regard in the community as to honesty, veracity, and integrity.

the oral assent of the parties to these disbursements was permissible. Discipline is warranted by other findings that are fully supported by the record.

Petitioner argues strenuously that he did not "willfully" misappropriate funds in the trust account. The State Bar concedes this, noting that "no findings were made that petitioner intended to deceive or defraud anyone by his actions relating to his trust account." However, as the State Bar Court correctly noted, "good faith of an attorney is not a defense involving Rules of Professional Conduct 8-101(A)(B)." (*Heavey v. State Bar* (1976) 17 Cal.3d 553, 558 [131 Cal.Rptr. 406, 551 P.2d 1238].) ■ Rule 8-101 is violated where the attorney commingles funds or fails to deposit or manage the funds in the manner designated by the rule, even if no person is injured. (*Alberton v. State Bar* (1984) 37 Cal.3d 1, 13 [206 Cal.Rptr. 373, 686 P.2d 1177, A.L.R.4th 1487].) Finally, rule 8-101 leaves no room for inquiry into attorney intent. (*Doyle v. State Bar* (1982) 32 Cal.3d 12 [184 Cal.Rptr. 720, 648 P.2d 942].)

Petitioner's claim that his mismanagement was not fraudulent or wilful may save him from other violations of the fiduciary and professional conduct rules, but it is not a defense to the charge that he violated rule 8-101(A) and (B).

## II. THE HERNANDEZ MATTER

In 1979 Ramon Hernandez entered into a written contract with Ms. Rodriguez for the purchase by him of property on Cinderella Street in San Jose. Subsequently, Mr. Hernandez was informed by the selling agent that Ms. Rodriguez was not going to sell the property to him. Mr. Hernandez then contacted petitioner to consult about the advisability of filing an action to have Ms. Rodriguez complete the sale or pay damages. Petitioner agreed to represent Mr. Hernandez in an action against the seller, and accepted a retainer of $1,000, which Mr. Hernandez paid in two installments. Petitioner then took the following steps, which the State Bar Court found were inadequate to fulfill petitioner's obligation of representation.

First, petitioner contacted Ms. Rodriguez in person to try and have her perform the contract. He never contacted her by letter, however, to demand performance. Petitioner contacted the title company and was informed that Ms. Rodriguez wished to cancel the escrow unilaterally, but he did not determine from the title company the status of the escrow between Mr. Hernandez and Ms. Rodriguez. Petitioner learned from the realtor that the seller had cancelled escrow, and that the property had been sold to someone else. He met with Mr. Hernandez and discussed the situation.

Petitioner next made a few investigative phone calls and consulted a real estate attorney about the possibility of a suit for specific performance and damages. He and the lawyer concluded that it would be a futile effort, since specific performance would not lie where the property had been sold to someone with no knowledge of the Hernandez contract and damages would be hard to show. The State Bar Court found that petitioner twice represented to Mr. Hernandez that a court date had been set, and that a suit for property settlement was underway. Petitioner then advised Hernandez to buy another residence, and Mr. Hernandez brought the papers for that purchase to him for review.

Mr. Hernandez sought to have the $1,000 fee refunded, but petitioner resisted and the matter went to fee arbitration through the local bar association. In arbitration, Mr. Hernandez was awarded $500, which petitioner paid in December, 1984.

Based on the factual findings in these two matters the review department made the following conclusions of law:

1. There was an attorney-client relationship between respondent (petitioner) and Manuel Gonzalez.

2. An attorney owes his client a fiduciary duty in dealing with the client's funds deposited in a trust account.

3. Respondent was a constructive trustee for Camila Gonzalez with respect to funds in a trust account.

4. An attorney owes a duty as a constructive trustee to his constructive beneficiary that is fiduciary in nature.

5. One purpose of rule 8-101(A) and (B), is to provide against the probability in some cases of commingling or misappropriating, the possibility in many case of commingling or misappropriation, and the danger in all cases that commingling will result in loss of clients' money.

6. Good faith of an attorney is not a defense in cases involving rule 8-101(A) and (B).

7. Rule 8-101 requires that all funds received or held for the benefit of clients or others who may have a direct interest in such funds shall be deposited in an identifiable client trust account. The rule is violated merely by an attorney's commingling of his client's money with his own, or by his

failure to deposit and manage such money in the manner designated by the rule even if no person is injured.

8. Rule 8-101 leaves no room for inquiry into the attorney's (depositor's) intent.

9. Respondent violated the provisions of section 6068, subdivision (c).

10. Respondent violated rules 2-111(A)(2), 6-101(2).

11. Respondent violated rules 8-101(A), 8-101(B)(4).

The review department did not otherwise identify the conduct which it concluded violated these various statutory provisions and rules. It is clear from these recitals, however, that the conclusion that petitioner violated rule 8-101(A) and (B) related to his conduct in the Gonzalez matter. We infer that the conclusion that petitioner violated rules 2-111(A)(2) (withdrawal from employment) and 6-101(2) (failure to perform competently) related to the Hernandez matter. We are mystified, however, as to the basis for the conclusion that petitioner violated section 6068, subdivision (c), as we find no support in the record for finding that he failed in his duty to "counsel or maintain such actions, proceedings, or defense only as appear to him or her legal or just except the defense of a person charged with a public offense." The State Bar offers no authority for a construction of that statute which would encompass the misconduct petitioner was found to have engaged in.

Petitioner challenges the conclusion of the review department that he violated rule 8-101(A) and (B)(4). He contends that his deposit of funds into the trust account did not constitute commingling, and that he had no obligation to either pay funds from the account to Camila as she was not his client and her right to the funds was disputed, or to account to her. We agree only that petitioner's deposit of the $1,330.27 from his partnership and personal accounts on August 25, 1982, did not constitute commingling of funds within the meaning of the rule. The clear import of the evidence is that the deposit was made to restore to the account funds that had been improperly withdrawn, i.e., those withdrawn by petitioner for his own fee, and to cover the $1,400 postdated check to Camila. The $1,000 was to have been deposited into the trust account by petitioner's client, or if the client was unable to do so he was to reimburse petitioner who would himself make the deposit. There is no suggestion that, once the funds were deposited, they either were, or petitioner believed that they were, his funds rather than trust funds belonging to his client and/or Camila. ▮▮ An attorney's restoration of funds wrongfully withdrawn from a trust account is not a further

violation of the Rules of Professional Conduct as a prohibited "commingling" of attorney and client funds.

 We reject petitioner's claim that he had no obligation to account to or pay funds to Camila, however. As the review department concluded, the nature of the agreement pursuant to which the proceeds from the sale of the restaurant were deposited in petitioner's trust account created a duty to Camila as well as to petitioner's client. As a fiduciary his obligation to account for the funds extended to both parties claiming an interest in them. Having assumed the responsibility to hold and disburse the funds as directed by the court or stipulated by both parties, petitioner owed an obligation to Camila as a "client" to maintain complete records, "render appropriate accounts," and "[p]romptly pay or deliver to the client" on request the funds he held in trust.

Quite apart from petitioner's failure to maintain complete and accurate records and to render accounts, however, there is clear and convincing evidence of other violations of rule 8-101 by his unauthorized withdrawal of the $1,000 paid to himself for his fees and payment of $550 from the trust funds to Dorothy at a time when there were insufficient funds in the trust account to cover the check apart from those of the Gonzalez couple.

 Petitioner also disputes the conclusion of the State Bar Court that he violated rules 2-111(A)(2) and 6-101(2). Petitioner states that his failure to file a complaint on behalf of Mr. Hernandez does not constitute a violation of rule 6-101(2), since in his opinion to have done so may have been a violation of his duty under section 6068, subdivision (c), not to pursue a matter of dubious merit. Petitioner had been retained at a time prior to that in which the property was sold to a bona fide purchaser without notice of the seller's contract with his client. He was retained for the purpose of protecting Hernandez's interest in the property, if necessary by initiating an action for specific performance and/or damages. He took no action to prevent consummation of the sale to the third party, however, and he offered no evidence in these proceedings that he had made any inquiry or investigation thereafter to determine whether the seller's breach of the contract caused damage to his client.

We agree with petitioner that the record does not support the conclusion that his conduct violated rule 2-111(A)(2). He did not withdraw from representation of Hernandez. After the property had been sold he continued to advise Hernandez, recommended the purchase of other property, and he reviewed the papers related to the subseqent purchase. His conduct constituted an intentional or reckless failure to perform legal services competently, not a withdrawal from representation of Hernandez.

■ We also agree that neither this conduct nor that in the Gonzalez matter violated section 6068, subdivision (c). That section does not impose an affirmative duty on an attorney to initiate a lawsuit. Quite the opposite. It appears to establish a limitation on his discretion to do so by prohibiting counsel from maintaining actions which do not appear to the attorney to be meritorious. Therefore, petitioner's failure to initiate a lawsuit on behalf of Hernandez did not violate the section. ■ Nonetheless, petitioner's failure to act competently[13] in the Hernandez matter did violate rule 6-101(A)(2), and thus warrants the imposition of discipline. It is irrelevant that the conduct violated only one of the three provisions relied upon by the review department. Similarly, petitioner did not violate the section 6068, subdivision (c), in his representation of Gonzalez, but his other conduct in that matter does warrant discipline.

## III. MITIGATING FACTORS

Petitioner presents a number of factors aimed at lessening his culpability in these incidents and at showing that the recommended discipline is too severe. First, as has already been noted, petitioner claims and the State Bar concedes that none of the actions with regard to the Gonzalez funds was intended to deceive or defraud. On the other hand it has also been noted that good faith may mitigate, but is not a defense to misappropriation and commingling of client trust funds. (*Schultz* v. *State Bar, supra,* 15 Cal.3d 799, 804. See also *Heavey* v. *State Bar, supra,* 17 Cal.3d 553.) Moreover, the State Bar Court found that petitioner actually had misrepresented to Mr. Hernandez that an action had been filed and that court dates had been set. Although petitioner disputes this factual finding, it is supported by the evidence. Such misrepresentation is, of course, a serious form of deception.

■ Petitioner's principal claim for mitigation is based on the character testimony of several judges and attorneys in the San Jose area. As the State Bar Court found, "several personages provided letters and testified relating to Respondent's [petitioner's] reputation both from the individuals' specific knowledge and in the community for honesty, veracity and candor." The review department argues that this evidence should not affect the determination of discipline in this case. Because the purpose of these proceedings is protection of the public, preservation of confidence in the legal system, and maintenance of high standards of professionalism, this evidence is relevant to the extent that it suggests that the discipline recommended by the review department, or that proposed for a particular violation in the Standards, is

---

[13] Rule 6-101(A)(1) now provides: "Attorney competence means the application of sufficient learning, skill, and diligence necessary to discharge the member's duties arising from the employment or representation."

not necessary or appropriate to deter future misconduct or serve the other purposes of attorney discipline.

Therefore, the evidence that petitioner's reputation in the legal community is good, coupled with the absence of any prior record of discipline, may be considered in support of petitioner's argument that the recommended six-month suspension is excessive.

## IV. DISCIPLINE

 In State Bar disciplinary proceedings the petitioner bears the burden of demonstrating that the discipline recommendation of the review department is unwarranted or erroneous. (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139]; *Ballard* v. *State Bar* (1983) 35 Cal.3d 274, 291 [197 Cal.Rptr. 556, 673 P.2d 226]; *Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].) He has not done so in this matter. We recognize that the record fails to support the conclusion of the review department that petitioner commingled funds and violated section 6068, subdivision (c). He has presented evidence that his office procedures have been improved and steps taken to avoid improper disbursements from client trust funds. In the eight years since he represented Gonzalez no repetition of the type of conduct that led to these proceedings has been reported. We are satisfied that the reporting procedures and other conditions of probation recommended by the review department, will reinforce his determination to avoid similar conduct in the future. Nonetheless, the six-month suspension recommended by the State Bar is not excessive. It can reasonably be considered necessary to deter future misconduct, and is consistent with the guidelines suggested by the State Bar as the appropriate sanction for misconduct of this nature.

Standard 2.2 of the Standards embodies the recommended sanctions for misconduct involving entrusted funds or property, like that misconduct involved in the Gonzalez matter. Subdivision (a) of standard 2.2 provides that an attorney who is guilty of wilful misappropriation of entrusted funds shall generally be disbarred; subdivision (b) provides that an attorney who is not guilty of wilful misappropriation of such funds, but who nonetheless is guilty either of commingling of such funds or of "another violation of rule 8-101, Rules of Professional Conduct," shall be subjected to *"at least a three-month* actual suspension from the practice of law, irrespective of mitigating circumstances." (Italics added.)[14] Even assuming that there was

---

[14]Standard 2.2 provides in full: "(a) Culpability of a member of wilful misappropriation of entrusted funds or property shall result in disbarment. Only if the amount of funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances

no wilful misappropriation in this case, this guideline suggests that at least a three-month actual suspension is warranted on the basis of the Gonzalez matter alone. Further, we have noted petitioner's failure to make a prompt and accurate accounting of funds entrusted to him, which is a specific aggravating factor identified by standard 1.2, subdivision (b)(iii).

In addition to the Gonzalez matter, of course, we have petitioner's misconduct in the Hernandez matter. The evidence in that matter supports the Bar's findings that petitioner wilfully failed to perform competently the legal services for which he had been employed (rule 6-101), compounded by twice misrepresenting to his client the status of the case. Although the new guidelines do not establish any specific or minimum sanction for such misconduct (see std. 2.4, subd. (b)),[15] standard 1.2, subdivision (b)(ii) makes it clear that multiple acts of wrongdoing constitute an "aggravating circumstance" justifying a greater sanction than otherwise would be warranted.

Thus, the six-month actual suspension recommended by the State Bar appears consistent with the sanctions contemplated by the new guidelines. Under some circumstances, we might find that the guidelines' recommended sanctions are either too harsh or too lenient in light of all the circumstances in the case. In this matter, however, notwithstanding the shortcomings of the record, petitioner has not demonstrated that the State Bar's recommendation is erroneous. (See *Bambic* v. *State Bar* (1985) 40 Cal.3d 314, 323 [219 Cal.Rptr. 489, 707 P.2d 862]; *McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 84 [196 Cal.Rptr. 841, 672 P.2d 431].)

It is hereby ordered that petitioner, Rudy D. Guzzetta, be suspended from the practice of law for a period of three years; that execution of the order for such suspension be stayed; and that petitioner be placed upon probation for the three-year period on condition that he be actually suspended from the practice of law for the first six months of such period of probation and that he comply with those additional conditions of probation set forth in the review department's recommended order.

---

clearly predominate, shall disbarment not be imposed. In those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances.

"(b) Culpability of a member of commingling of entrusted funds or property with personal property or the commission of another violation of rule 8-101, Rules of Professional Conduct, none of which offenses result in the wilful misappropriation of entrusted funds or property shall result in at least a three month actual suspension from the practice of law, irrespective of mitigating circumstances."

[15] Standard 2.4, sudivision (b), provides: "Culpability of a member of wilfully failing to perform services in an individual matter or matters not demonstrating a pattern of misconduct or culpability of a member of wilfully failing to communicate with a client shall result in reproval or suspension depending upon the extent of the misconduct and the degree of harm to the client."

It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order.

This order is effective 30 days after the filing of this opinion.

PANELLI, J.—I respectfully dissent. Petitioner's conduct warrants discipline but, in my view, the record falls far short of supporting suspension for a full six months. I base my conclusion on the following: (1) Petitioner, as a member of the State Bar since 1974, has had a good reputation in the legal community and is respected by judges and lawyers in his community; (2) he has no prior record of discipline; (3) petitioner did not commingle funds in August 1982 within the meaning of Rules of Professional Conduct, rule 8-101; (4) petitioner lacked the intent to deceive or defraud in the Gonzalez matter; and (5) petitioner, although his representation may not have been competent, did not withdraw from that representation in the Hernandez matter. In light of these considerations, a six-month actual suspension strikes me as an unduly harsh response to petitioner's conduct.

Broussard, J., concurred.